HOMER S. DEAL and NELLIE M. DEAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Deal v. Commissioner
Docket No. 995-71.
United States Tax Court
T.C. Memo 1973-49; 1973 Tax Ct. Memo LEXIS 241; 32 T.C.M. (CCH) 216; T.C.M. (RIA) 73049; February 26, 1973, Filed Myron E. Anderson, for the petitioners. Craig D. Platz, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $1,425.38 in petitioners' Federal income tax for the year 1968. 2 At issue is whether the amount of $10,150.25 received in 1968 by petitioner Homer S. Deal for the cancellation of his agency management contract with Farmers Insurance Group is taxable as ordinary income or *242 as a long-term capital gain. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Homer S. Deal and Nellie M. Deal are husband and wife who resided in Boise, Idaho, at the time they filed their petition in this proceeding. They filed a timely joint Federal income tax return for the year 1968, reporting their income on the basis of cash receipts and disbursements. On the income tax return they included in their gross income the amount of $10,150.25 which was reported as capital gain income with 50 percent thereof included for tax purposes. Homer S. Deal (herein referred to individually as petitioner) has been in the insurance business more than 40 years. He has had an insurance agency relationship with what is now known as Farmers Group Insurance (herein called Farmers) since July 3, 1930, when Farmers was licensed in Idaho as Farmers Automobile Inter-Insurance Exchange. The company was organized in 1928 in California by a group of Grangers and Mutual Insurance people to meet a need of 3 writing automobile insurance at that time. The Idaho State Grange invited this company to come into Idaho. Petitioner was the first agent *243 appointed and the first policy written by this company in Idaho was by him on his own automobile. He was then local agent and district agent for Farmers at Nampa, Idaho. As agent, he solicited insurance business and appointed and trained agents. On June 1, 1934, petitioner was appointed "State Agent" for Farmers Automobile Inter-Insurance Exchange for what is known as Idaho-West Division and he moved to Boise. The Idaho-West Division, then and immediately prior to 1968, comprised Ada, Adams, Boise, Canyon, Elmore, Gem, Owyhee, Payette, Valley and Washington Counties. His duties were to secure and write insurance policies, appoint agents, train district agents, local agents, conduct agency schools, handle claims and every type of facility to make a good agency. Prior to 1948 the petitioner was also a local agent. After 1948 he helped in selling business with his men and did not solicit as local agent thereafter even though many sales were generated by him. The appointment agreement beginning June 1, 1934, was for a ten year period. Similar but superseding appointment agreements were entered into every ten years until June 4, 1964, when they were entered into for periods *244 of two years each. 4 On June 10, 1966, the petitioner entered into an appointment agreement, which was effective June 4, 1966, with Farmers under which he was appointed Division Agency Manager of the Idaho-West Division without any material change in his duties and responsibilities. As Division Agency Manager, and previously as State Agent, the petitioner's principal duties consisted of maintaining records pertaining to Farmers' business within the Division, and recruiting, training and assisting the district managers and agents within the Division.As consideration, petitioner received a portion of service (renewal) commissions on existing policies and membership fees and commissions on new policies. The means and methods by which petitioner carried out his activities under the contract were controlled by Farmers. Petitioner was required to submit to Farmers for approval and before use "all circulars, letters or advertising matter of any kind." He was also required to conform to all rules and regulations of Farmers and submit regular reports to it. All records maintained in the Division relating to expirations and renewals of policies written by Farmers were the property *245 of Farmers. District managers and agents within the division were appointed by and under contract with Farmers. The appointment agreement effective June 4, 1966, also gave the petitioner the right to nominate his successor and to negotiate 5 with such successor for reasonable compensation to him for the value of that nomination and for such goodwill as may attach to the agency. While serving as Division Agency Manager, and earlier as State Agent, the petitioner furnished his own equipment and paid his own expenses. All district and local agents did likewise. During the period from June 4, 1934, until December 1967, primarily through petitioner's efforts, the number of district and local agents increased from less than 20 to about 80. By a document entitled "Cancellation of Contract Right" dated December 28, 1967, and effective December 31, 1967, petitioner and Farmers agreed to the cancellation of all of petitioner's rights under the extended appointment agreement effective June 4, 1966, and the payment by Farmers to petitioner, in five equal annual installments beginning 1968, of $50,751.27. This amount was equal to the renewal commissions payable to the Division *246 Agency Manager which would become due over a two-year period on policies then remaining on the books of Farmers in the Division, based on the rate of commissions existing at the date of cancellation of the appointment agreement and taking into consideration the then current lapse ratio in the territory. On January 1, 1968, Farmers appointed Wesley R. Christensen as successor to petitioner as Division Agency Manager of the Idaho-West 6 Division. Also on January 1, 1968, petitioner was named Legislative and Public Affairs Representative for Farmers. He still represents the company in that capacity as an independent contractor. Petitioner built a brick building at 23rd and State Street, Boise, Idaho, occupying it on July 17, 1952. Since its construction and to the present time, petitioner has rented part of the building to Farmers for its use as a branch claims office and part of it to district and local agents. Petitioner also used part of the building prior to 1968 as his division manager's office and to house the books, records, data, information on policies written and expirations, copies of most of the local and district agency contracts, agency production records, *247 claims records, loss ratio records, and other information relating to Farmers' policies in the division. Subsequent to 1967 the petitioner used part of the building as his office in carrying on his duties as Legislative and Public Affairs Representative for Farmers. The sign on the building reads "Farmers Insurance Group." When Farmers paid the petitioner for his interest in the appointment agreement, no allocation was made to the non-competition clause contained in the cancellation agreement. Petitioner received $10,150.25 from Farmers in 1968. He elected to use the installment method of reporting the transaction. 7 In his notice of deficiency dated December 2, 1970, the respondent determined that the $10,150.25 constituted ordinary income rather than a long-term capital gain. OPINION Petitioner's position is that he should be allowed to treat the amount he received in 1968 under the cancellation agreement as a long-term gain from the sale or exchange of a capital asset. He argues that the facts show that he sold a capital asset; that the asset did not come to an end or vanish; that the transaction was a sale or exchange; and that the formula used to determine the *248 value of the intangible asset was not the sale of a right to perform future service. To the contrary, respondent's position is that the $10,150.25 received by petitioner in 1968 should be treated as ordinary income. He asserts that the only thing relinquished by the petitioner was his right under the cancelled contract to perform future services and that such contract right was neither a "capital asset" as defined by section 1221, Internal Revenue Code of 1954, nor was it "sold or exchanged" within the meaning of section 1222 and 1231. We agree with the respondent. It is clear that "not everything which can be called property in the ordinary sense and outside the statutory exclusions qualifies as a capital assett." Commissioner v. Gillette Motor Transport, Inc., 8 364 U.S. 130 (1960). See also Corn Products Refining Company v. Commissioner, 350 U.S. 46 (1955). It is also clear that the relinquishment of a contract right is not deemed a sale or exchange where that right merely comes to an end and vanishes upon its relinquishment to the other contracting party. Leh v. Commissioner, 260 F.2d 489 (C.A. 9, 1958), affirming *249 27 T.C. 892 (1957). In our judgment the result in this case is compelled by the prior decisions in Robert E. Foxe, 53 T.C. 21 (1969), and Elliott v. United States, 431 F.2d 1149 (C.A. 10, 1970).In Foxe, the taxpayer terminated his "employment agreement" with the Constitution Life Insurance Company under which his principal duties were the solicitation of insurance business and the training of sales agents in return for a salary and certain override commissions. The record did not support a finding that the sales agents were employed by Foxe and, under the terms of the agreement, all records and leads acquired and maintained by Foxe were the property of Constitution. In holding that the termination proceeds were taxable as ordinary income, this Court found that "petitioner had, under the employment agreement, no business of his own, the "goodwill" or "going concern value" of which was, or could be, sold to Constitution." Rather, his only right of value "was the right to perform services and receive ordinary income." 9 In Elliott, the taxpayer terminated his contract with an insurance company under which he had solicited business for the *250 company in return for commissions and the reimbursement of certain expenses. Under the contract, designated a "general agency contract," all records pertaining to the agency's business were the property of the insurance company. Elliott retained his personal list of potential customers, his building in which he had conducted the "general agency" and his sign reading "Postal Life and Casualty Insurance Agency, C. Rogler Elliott, General Agent." The Court found that whatever goodwill Elliott had built up for the company as its agent belonged to the company and that whatever goodwill he had built up for himself as a general agent he retained. The only thing relinquished by Elliott was his right to render services and earn commissions for such services in the future, which right was "cancelled and terminated." Consequently, it was held that the termination proceeds received by him were taxable as ordinary income. In the instant case the petitioner relinquished nothing more than his right under the contract to perform future services, and thus the proceeds flowing from the relinquishment of that right are not entitled to capital gain treatment. Here, as in Foxe, the record is void *251 of any evidence that petitioner built up "something of value, an organization, a going concern, an agency, call it what 10 you will," which was his to sell. The organization he built belonged to Farmers. Although petitioner recruited and worked closely with the district managers and agents comprising the sales force within the Idaho-West Division, they could not be considered his employees since they were appointed by and under direct contract with Farmers, The sales force part of the organization built up by petitioner was not his to sell or transfer. Nor did he own the insurance "leads" maintained in the division. His appointment agreement with Farmers specifically provided that "expiration and renewal" records were and should remain the property of Farmers. In addition, petitioner testified that all advertising was done in the name of Farmers.The sign on the building on which he maintained his office as Division Agency Manager read "Farmers Insurance Group," and petitioner retained the use of that office after the cancellation of his appointment agreement. Hence petitioner did not personally acquire goodwill in the nature of a "name" which he could transfer, and any *252 goodwill acquired by reason of "location" he retained. Paragraph 20 of petitioner's appointment agreement with Farmers provided that, upon cancellation or termination of the agreement, petitioner had the right to nominate his successor, subject to Farmers approval, and to negotiate with such successor "for reasonable compensation for the value of that nomination and such goodwill 11 as may attach to the agencies created hereby;" the maximum compensation for such nomination was limited to the amount of renewal commissions which would have been payable to petitioner as Division Agency Manager over the following two years, based upon the policies then outstanding in the division and the then current commission rates and lapse ratios. Petitioner testified to the effect that he disposed of "his" insurance agency by selling his right of nomination to Farmers rather than executing it, and the amount paid petitioner under the cancellation agreement was based upon the compensation formula set forth in paragraph 20 of the appointment agreement. However, as previously noted, the organization built up by petitioner was not "his" to sell or transfer and his right of nomination, standing *253 alone, certainly was not a "capital asset" which was "sold." That right merely vanished along with petitioner's other contract rights upon execution of the cancellation agreement. Petitioner's misconception that all intangible assets are capital assets seems to form the basis for his assertion in his opening brief that the respondent is taking a position in this case which is inconsistent with our decision in his favor in Marte A. Formico, T.C. Memo. 1971-171, on appeal (C.A. 9). We think respondent has correctly pointed out that there is no inconsistency and that the Formico opinion supports his position in this case. 12 In Formico, a district manager under a contract with Farmers, substantially similar to petitioner's contract, nominated as his successor the taxpayer who claimed amortization on the amount paid for the nomination. In disallowing the deduction, this Court found that all the nominee (Formico) acquired was the "opportunity to be appointed to the position of district manager." Hence, by corollary, that is all the nominator relinquished. It is inconceivable that petitioner in the instant case could have relinquished anything more merely because he *254 agreed to the termination of his right of nomination rather than executing it. In conclusion, we hold that the amount received by the petitioner in 1968 pursuant to the cancellation agreement is taxable as ordinary income. Decision will be entered for the respondent.