Larry and Sondra **BERBERICH**,
Plaintiffs,

v.

**PAYNE & JONES, CHARTERED, and**
**Harvey & McAuley, Chartered,**
Defendants.

**No. CIV. A. 97–2195–EEO.**

United States District Court,
D. Kansas.

April 7, 1998.

John Harl Campbell, Campbell, Holt & McCue, Kansas City, MO, Mark A. Corder, Olathe, for Larry Berberich, Sondra Berberich, plaintiffs.

Steven D. Ruse, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, James Borthwick, Lori J. Curcio, Blackwell, Sanders, Matheny, Weary & Lombardi L.L.P., Kansas City, MO, for Payne & Jones, Chartered, Harvey & McAuley, Chartered, defendants.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion for summary judgment of defendant Payne & Jones, Chartered (Doc. # 79). After careful consideration of the parties' briefs and evidentiary materials, the court is prepared to rule. For the reasons set forth below, defendant's motion will be granted.

### Factual Background

For purposes of defendant's motion, the following is a brief summary of the material facts that are uncontroverted, deemed admitted, or where controverted viewed in the

light most favorable to the non-movant, pursuant to Federal Rule of Civil Procedure 56 and District of Kansas Rule 56.1.

In 1980 and 1981, plaintiffs Larry and Sondra Berberich invested in several computer leasing tax shelter transactions through St. Joseph Equity Corporation. In 1986 and 1989, plaintiffs received Notices of Deficiency from the Internal Revenue Service ("IRS") in which the IRS challenged the validity of the St. Joseph Equity Corporation tax shelter and proposed to disallow certain tax deductions and to impose certain penalties against plaintiffs for the tax years 1980, 1981, 1982, and 1983. Plaintiffs retained Payne & Jones to represent them in connection with the IRS challenge to the tax shelter. Payne & Jones filed petitions on behalf of plaintiffs in the United States Tax Court asserting the validity of the tax shelter and disputing the IRS' right to disallow the deductions and to impose penalties.

Plaintiffs' Tax Court cases were settled with the IRS in April 1994. As a result of the settlement, certain deductions which were disallowed became allowable for the years 1984 and 1986 through 1989, giving plaintiffs a claim for income tax refunds for the years 1984 and 1986 through 1989. Plaintiffs allege in this action that Payne & Jones negligently failed to timely file protective refund claims with the IRS, and that as a result thereof plaintiffs lost their tax refunds and interest for the years 1984 and 1986 through 1989.

In October 1995, plaintiffs retained attorney Theodore Brill to assist them in their claim for tax refunds. Mr. Brill filed amended tax returns on behalf of plaintiffs claiming refunds for the years 1984, and 1986 through 1989 arising out of the settlement of the Tax Court litigation. Mr. Brill asserted that plaintiffs' amended returns were timely under the mitigation provisions of the Internal Revenue Code. See 26 U.S.C. § 1311 et seq. Plaintiffs' administrative claim for these tax refunds and interest pursuant to the mitigation provisions of the Internal Revenue Code has not been determined by the IRS. If plaintiffs are successful on their pending claim with the IRS, plaintiffs will recover the same refunds plus interest that are the subject of their claims in this action. Mr. Brill has testified in the instant action that plaintiff's position under the mitigation provisions of the Internal Revenue Code is "extremely weak."

*Summary Judgment Standards*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. 2505.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmov-

ing party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D. Kan. Rule 56.1.

### Analysis

Defendant has moved for partial summary judgment on plaintiffs' claim that defendant was negligent for failing to timely file protective refund claims with the IRS and that as a result plaintiffs lost their tax refunds and interest for the years 1984 and 1986 through 1989. Defendant argues that plaintiffs have not suffered any injury from defendant's alleged negligence unless and until the IRS denies plaintiff's refund claims. Defendant essentially argues that plaintiffs' claim is premature. Accordingly, we must decide if plaintiff's cause of action for legal malpractice has accrued at this time.

The Kansas Supreme Court has noted the various theories for determining when a cause of action for attorney malpractice accrues. *See Pancake House, Inc. v. Redmond,* 239 Kan. 83, 87, 716 P.2d 575, 579 (1986). The theories include:

(1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.

(2) The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.

(3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

(4) The continuous representation rule— the client's cause of action does not accrue until the attorney-client relationship is terminated.

*Id.* The Kansas Supreme Court has declined to adopt any one of the above theories to the exclusion of the others, rather the application of a particular theory depends on the facts and circumstances of each case. *See Dearborn Animal Clinic v. Wilson,* 248 Kan. 257, 265, 806 P.2d 997, 1003 (1991); *Pizel v. Zuspann,* 247 Kan. 54, 76, 795 P.2d 42, 56 (1990); *Pancake House,* 239 Kan. at 87, 716 P.2d at 579.

In *Dearborn,* the court addressed when a claim for attorney malpractice accrues where there is pending litigation involving issues which may be relevant to the malpractice action. The court explained:

In a legal malpractice action in which there is underlying litigation which may be determinative of the alleged negligence of the attorney, the better rule, and the one which generally will be applicable under K.S.A. 60–513(b), is that the statute of limitations does not begin to run until the underlying litigation is finally determined. Ordinarily, as long as there is a good faith dispute, a layperson could not reasonably be expected to know that the dispute was caused by his attorney's negligence and the mere filing of an underlying lawsuit would not automatically trigger the running of the statute but would usually require a final determination of such an action.

*Dearborn,* 248 Kan. at 270, 806 P.2d at 1006. This rule is premised in part on the idea that a plaintiff should not be required to maintain inconsistent positions in the underlying dispute and the attorney malpractice case. The Kansas Supreme Court recognized the importance of this principle in *Dearborn:*

Plaintiff's decedent could have played it safe by filing an action against defendants immediately upon his being sued, in the event it subsequently appeared defendants' negligent advice was the cause of the action brought against him. However, it does not seem wise to encourage the filing of such provisional actions. More important, it could prove to be disastrous to a plaintiff's defense of the action brought against him and, thus, perhaps disastrous to his former legal advisor as well. In the present case, plaintiff's decedent would have been defending one suit or action, claiming he had acted in conformance with the law, while simultaneously maintaining an action against defendants, claiming that he had not acted in conformance with the law because of faulty advice from defendants. Such an inconsistent position would have given rise to impeachment of decedent in his defense of the action brought against him, which certainly is not desirable from either of the present parties' point of view.

248 Kan. at 269–70, 806 P.2d at 1006 (quoting *United States Nat'l Bank v. Davies*, 274 Or. 663, 668–70, 548 P.2d 966 (1976)) (internal quotation omitted); *see Peat, Marwick, Mitchell & Co. v. Lane*, 565 So.2d 1323, 1326 (Fla.1990) ("To require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified."). The *Dearborn* court did recognize a limited exception to the general rule that underlying litigation must be finally determined before a cause of action accrues. The exception applies where "it is clear that the plaintiff in a potential legal malpractice action has incurred injury and [ ] it is reasonably ascertainable that such injury was the result of the defendant attorney's negligence." 248 Kan. at 270, 806 P.2d at 1006.

■ The facts of *Dearborn*, although somewhat complex, provide a helpful background for our analysis of plaintiffs' claim in the instant action and whether plaintiffs' claim falls within the exception identified in *Dearborn*. In *Dearborn*, Dearborn decided to sell one of its veterinary clinics in addition to some stock in Central Animal Hospital ("Central"). *See id.* at 258, 806 P.2d at 998–

99. Dearborn hired an attorney, Mr. Wilson, to draft an asset purchase agreement between Dearborn and the buyer. *See id.* The buyer paid monthly installments pursuant to the purchase agreement for approximately one year, then the buyer informed Dearborn that he did not wish to exercise his option to purchase the Central stock. *See id.* at 259, 806 P.2d at 999. Dearborn sued the buyer for breach of contract arguing that the buyer agreed to purchase the stock of Central. *See id.* The buyer defended by maintaining that the purchase agreement did not require him to purchase the stock, rather he was given an option to purchase. *See id.* In Dearborn's subsequent answers to the buyer's interrogatories, Dearborn referred to the stock provision as a "stock option" and argued that the buyer "accepted the stock option." *See id.* at 260, 806 P.2d at 999. At that point in the litigation between Dearborn and the buyer, it was clear to Dearborn that the buyer received only an option in the agreement. *See id.* at 260, 806 P.2d at 999–1000. The court in the underlying suit between Dearborn and the buyer later granted partial summary judgment for the buyer and concluded that the agreement granted defendant an option to purchase the Central stock, which defendant did not exercise. *See id.* at 261, 806 P.2d at 1000.

Dearborn later filed suit against Wilson for malpractice in preparing the purchase agreement. *See id.* Dearborn claimed "Wilson was negligent in drafting the agreement which granted [buyer] an option to purchase Central stock, rather than requiring he purchase it." *See id.* Wilson claimed that Dearborn's malpractice claim was barred by the statute of limitations. The *Dearborn* court noted that although plaintiffs suffered monetary damage when they had to retain counsel to enforce their interpretation of the agreement in the action against the buyer, plaintiffs' cause of action did not accrue at that time because the fact that such injury was the result of Wilson's alleged negligence was not ascertainable. *See id.* at 271, 806 P.2d at 1006. At the time Dearborn retained counsel to pursue suit against the buyer, Dearborn was "still attempting to enforce their understanding of the [ ] agreement,"

*i.e.*, the agreement required buyer to purchase the Central stock. *See id.* If Dearborn would have succeeded in the underlying litigation, then they would have had no cause of action against Mr. Wilson. The court held that Dearborn's malpractice cause of action accrued when Dearborn, in effect, conceded in their interrogatory answers that their interpretation of the contract was erroneous and that the buyer had only an option to purchase the stock. In other words, the critical factor for determining Mr. Wilson's negligence was resolved in the underlying action and plaintiffs were damaged because they had already incurred attorneys' fees in the underlying action.

The parties here agree that the results of the underlying dispute between plaintiffs and the IRS may determine whether defendant Payne & Jones was negligent in failing to advise plaintiffs to file protective refund claims. *See* Plaintiffs' Statement of Facts No. 32 ("If plaintiffs are not, as a legal matter, entitled to the benefit of the mitigation provisions of Sections 1311, et seq., Internal Revenue Code, Thomas K. Jones and Jodde O. Lanning were below the standard of care in failing to recommend that plaintiffs file protective refund claims."); Defendant's Statement of Facts No. 19 ("If plaintiffs are successful on their pending claims with the IRS, plaintiffs will recover the same refunds plus interest that are the subject of their claims in this action.") (uncontested by plaintiffs). It also is undisputed that the issue of whether plaintiffs are entitled to refunds from the IRS pursuant to the mitigation provisions of the Internal Revenue Code is unresolved at this time. Plaintiffs here are in a very similar position as the *Dearborn* plaintiffs were in prior to the *Dearborn* plaintiffs' admissions that the purchase agreement provided only an option to purchase. As in *Dearborn*, plaintiffs are still maintaining that they are entitled to a refund pursuant to the mitigation provisions of the Internal Revenue Code, a position which is consistent with a finding of no negligence on the part of Payne & Jones. If plaintiffs are successful on their claim with the IRS, they apparently will not have a malpractice claim against defendant for failure to file protective refund claims. Therefore, plaintiffs' claim against defendant,

based on defendant's alleged failure to file protective refund claims, has not accrued at this time. *See Dearborn, supra, Pizel*, 247 Kan. at 76–77, 795 P.2d at 56–57 (malpractice action against attorneys who drafted trust and trust amendments did not accrue until trust was declared invalid by trial court); *Pancake House*, 239 Kan. at 88–89, 716 P.2d at 579–80 (client corporation's claim against former attorney based on suit by former attorney against corporation did not accrue until judgment was entered in underlying suit).

Plaintiffs primarily argue that their claim against Payne & Jones has accrued because it is more probable than not that plaintiffs will not receive the requested refunds from the IRS. The legal standard articulated by the Kansas Supreme Court, however, is whether the underlying claim "may be determinative of the alleged negligence of the attorney." *Dearborn*, 248 Kan. at 270, 806 P.2d at 1006. The likelihood of plaintiffs' success is not relevant in the court's determination of whether plaintiffs' cause of action has accrued so long as there is a "good faith dispute between the parties in the underlying litigation." *Id.* at 270, 806 P.2d at 1006. This result is dictated in part by the principle that a plaintiff should not have to maintain inconsistent positions in the underlying case and malpractice case. Here, if the court allowed plaintiffs' claim to go forward, plaintiffs would face the problem of maintaining inconsistent positions in two different proceedings. Plaintiffs' situation is even further complicated by the fact that the attorney representing plaintiffs' interests in the dispute with the IRS, Mr. Brill, also is an expert witness for plaintiffs in this malpractice action.

Plaintiffs also argue that they already have incurred damage by being forced to retain an attorney to pursue their refund claims with the IRS. The *Dearborn* court rejected a very similar argument made by the defendant which also was adopted by the trial court and the Kansas Court of Appeals. *See id.* at 271, 806 P.2d at 1006. Consistent with the *Dearborn* opinion, we conclude that while the fees plaintiffs have paid their new attorney may ultimately constitute damages attributable to

defendant's alleged negligence, plaintiff has not offered any evidence at this time that such damages are the result of defendant's negligence.

Finally, plaintiffs contend that defendant's arguments essentially are a claim that plaintiffs failed to mitigate their damages, an issue for which defendant bears the burden of proof. We find that the issues presented in defendant's motion are distinct from the defendant's affirmative defense that plaintiffs failed to mitigate damages. The issue in the instant motion is whether plaintiffs have suffered any injury due to the alleged negligence of defendants, not whether plaintiffs have properly mitigated their damages. Plaintiffs must present evidence of some damages attributable to defendant's conduct before the issue of mitigation of damages is even relevant.

IT IS THEREFORE ORDERED that defendant's motion for partial summary judgment (Doc. # 79) is granted. Plaintiff's claim that defendant Payne & Jones was negligent for failing to file protective refund claims is dismissed as premature.