2001 UT 90

**Deveaux CLARK and Marjorie Clark, Plaintiffs and Appellants,**

v.

**DELOITTE & TOUCHE LLP, formerly known as Touche Ross & Co., Defendants and Appellees.**

No. 990772.

Supreme Court of Utah.

Oct. 19, 2001.

Steven P. Simpson, Bluff, Jesse C. Trentadue, Salt Lake City, for plaintiffs.

William M. Smith, Washington DC, Gary F. Bendinger, Wesley D. Felix, Andrew G. Deiss, Karen Martinez, Robert J. Sonne, Salt Lake City, for defendants.

DURHAM, Justice:

¶ 1 Plaintiffs Deveaux and Marjorie Clark (the Clarks), husband and wife, appeal the dismissal of their professional negligence action against defendant Deloitte & Touche LLP (Deloitte). The district court held that the Clarks' action is barred by the four-year statute of limitation set forth in section 78–12–25(3) of the Utah Code. We reverse.

## BACKGROUND

¶ 2 Because this is an appeal from a motion to dismiss under rule 12 of the Utah Rules of Civil Procedure, this court " 'accept[s] the factual allegations in the complaint as true and consider[s] all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff[s].' " *Educators Mut. Ins. Ass'n v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1029 (Utah 1995) (quoting *Prows v. State*, 822 P.2d 764, 766 (Utah 1991)).

¶ 3 Applying this standard, we accept the following operative facts from the Clarks' amended complaint. Beginning in 1965, the Clarks operated a Farmers Insurance Company (Farmers) agency in Salt Lake City, Utah. The Clarks' business relationship with Farmers was governed by a District Manager's Appointment Agreement, which provided that upon termination, the Clarks had the option of receiving a lump sum payout from Farmers or obtaining a purchaser with Farmers's approval. Their interest in the agency constituted the bulk of the Clarks' retirement assets.

¶ 4 Nearing retirement age, the Clarks sought tax advice from defendants Vernon Calder (Calder) and Dexter Snow (Snow), both accountants for defendant Grant Thornton & Company. The Clarks specifically requested assistance in retirement planning, as well as advice on the options available to them for avoiding unnecessary taxes. They were advised to accept a lump sum payment from Farmers and retire by December 31, 1986, in order to claim the lump sum payment as capital gain for tax purposes. Calder and Snow also advised the Clarks that the tax law regarding capital gain would change by January 1, 1987, and that the new law would not be as beneficial to them.

¶ 5 Shortly thereafter, Calder moved to Deloitte where he continued to act as the Clarks' accountant and tax advisor. Relying on Calder's advice, the Clarks sold their interest in the agency to Farmers for a lump sum payment of $748,410 on December 31, 1986. In April 1987, defendant Gary C. Hayes, an accountant for Deloitte, prepared and signed the Clarks' 1986 federal tax return. The tax return treated the Clarks' lump sum payment as capital gain.

¶ 6 Unknown to the Clarks, in 1973 the United States Tax Court held that upon termination of a Farmers Agency Agreement, the lump sum payment is treated as ordinary income and not capital gain. *Deal v. Commissioner*, 32 T.C.M. (CCH) 216 (1973). In March 1988, the Clarks received notice from the Internal Revenue Service (IRS) that their 1986 tax return was being audited; specifically, the treatment of the lump sum payment was being challenged. Upon receipt of that notice, the Clarks contacted Calder, who assured them the capital gain treatment of

the lump sum payment was accurate and that the 1986 tax returns had been properly prepared. He advised the Clarks to contest the IRS's position that the lump sum payment was ordinary income rather than capital gain.

¶ 7 Following the audit, the Clarks received a letter from the IRS in January 1990 advising them that because the IRS characterized the lump sum payment as ordinary income, they were being assessed $262,298 in additional taxes and $32,361 in penalties. This letter also informed them that the assessment would become final unless they appealed it within thirty days. Calder continued to assure the Clarks that the tax advice and tax return preparation were correct, and to advise them to appeal the additional assessment and penalties.

¶ 8 Relying on Calder's advice, and unable to pay the additional taxes and penalties, the Clarks protested the assessment and proceeded through the administrative appeals process. In September 1991, the Clarks received a letter from the IRS informing them that their appeal had been rejected, and that they had ninety days to challenge the assessment by appealing to the United States Tax Court; otherwise the assessment would become final.

¶ 9 Again, relying on Calder's advice, the Clarks appealed the assessment to the Tax Court. On June 16, 1994, the Tax Court issued its opinion rejecting the IRS's claim for $262,298 in additional taxes, but nevertheless upholding the IRS's position on ordinary income and assessing the Clarks $129,443 in additional taxes and $32,361 in penalties. *See Clark v. Commissioner*, 67 T.C.M. (CCH) 3105 (1994).[1] The final judgment was entered on or about September 16, 1994.

¶ 10 Based on the above-described allegations, the Clarks asserted three claims against defendants: one for professional malpractice, one for punitive damages, and one for breach of contract.[2] The Clarks alleged in their complaint that they provided defendants all the necessary records and information to properly advise them on their retirement options and tax consequences. According to the Clarks, the defendants held themselves out as accounting and tax professionals possessing the experience and expertise in financial and tax affairs necessary to advise them concerning the best manner in which to exercise their rights under the agreement. Furthermore, the Clarks alleged that defendants were fiduciaries, who were paid for the services they provided, and who were trusted and depended upon by the Clarks to provide them with sound accounting and tax advice. As judgment, the Clarks requested among other things, "the additional taxes, interest, and penalties paid or found owing to the IRS and/or State tax authorities as a consequence of Defendants' negligence and/or breach of contract," "general damages for ... emotional distress," and "the amount of fees and charges paid ... to Defendants for their services."

¶ 11 Deloitte moved to dismiss under rule 12 of the Utah Rules of Civil Procedure. In its motion, Deloitte argued that as a matter of law the Clarks' malpractice claim was barred by the applicable four-year statute of limitation because the claim arose when the erroneous return was filed in April 1987, or at the latest on September 19, 1991, when the Clarks received the ninety-day letter from the IRS. Deloitte further argued that the discovery rule was inapplicable because it was not mandated by statute, there was no fraudulent concealment or exceptional circumstances, and the Clarks knew of the Tax Court's decision prior to the expiration of the statute of limitation. If the discovery rule

---

1. Eventually, the Clarks settled their tax liability for $65,615 plus interest.

2. The Clarks filed a pro se complaint alleging these three claims on June 13, 1996, naming Deloitte, Grant Thornton & Co., Dexter Snow, Vernon Calder, and Gary C. Hayes as defendants. The case was dismissed as to all defendants in March 1997 for failure to serve pursuant to rule 4(b) of the Utah Rules of Civil Procedure. In April 1997, counsel for the Clarks moved to set aside the order of dismissal as to Deloitte because Deloitte was served in a timely fashion. The case was reopened in June 1997. On September 18, 1997, the Clarks filed an amended complaint which names the same defendants and asserts the same claims as the original complaint. Although the amended complaint names all prior defendants, it appears from the record that Deloitte is the only defendant that was served timely and that remains in this case.

applied, Deloitte nevertheless argued the claim would still be time barred as a matter of law. With respect to the claim for punitive damages, Deloitte argued it was not a separate legally cognizable claim. As to the claim for breach of contract, Deloitte argued it was a rephrased negligence claim.

¶ 12 In response, the Clarks argued their malpractice claim did not arise until June 16, 1994, when the United States Tax Court rendered its opinion. According to the Clarks, prior to the Tax Court's final decision, their damages were too remote and speculative to be the subject of a lawsuit. In the alternative, the Clarks contended that if their claim had arisen prior to the Tax Court's ruling, the statute of limitation was tolled by Calder's representations that the tax advice and 1986 tax return were correct; as well as his advice to appeal the assessment of taxes and penalties. The Clarks also argued the statute of limitation had been tolled under the exceptional circumstances doctrine of Utah's discovery rule because they relied on the defendants' superior knowledge and training.

¶ 13 The district court dismissed the plaintiffs' malpractice claim holding that under section 78–12–25(3) of the Utah Code the applicable statute of limitation is four years. The court concluded that the action accrued, at the latest, in September 1991, when the Clarks received the ninety-day letter. In addition, the court found that the discovery rule did not apply in this case, and that no exceptional circumstances existed to toll the running of the statute of limitation. Because plaintiffs failed to respond to Deloitte's arguments regarding the claims for punitive damages and breach of contract, the court also dismissed these claims. Therefore, the only claim on appeal is the claim for professional malpractice.[3]

## STANDARD OF REVIEW

¶ 14 Under rule 12 of the Utah Rules of Civil Procedure, a motion to dismiss is prop-

er "only where it clearly appears that the plaintiff or plaintiffs would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim." *Prows v. State*, 822 P.2d 764, 766 (Utah 1991). Accordingly, we will affirm the district court's dismissal " 'only if it is apparent that as a matter of law, the plaintiff[s] could not recover under the facts alleged.' " *Educators Mut. Ins. Ass'n.*, 890 P.2d at 1030 (citing *Lowe v. Sorenson Research Co.*, 779 P.2d 668, 669 (Utah 1989)). "Because we consider only the legal sufficiency of the complaint, we grant the [district] court's ruling no deference and review it for correctness." *Id.*

## ANALYSIS

### I. OVERVIEW OF TAX APPEAL PROCESS

¶ 15 When a federal tax return is selected for audit, an examination is performed by an IRS examiner. At the conclusion of the examination, the taxpayer is informed of the examiner's findings and any proposed deficiency assessments. If the taxpayer agrees with the findings of the examiner, he or she may sign the appropriate forms acknowledging tax liability. By signing these forms, the taxpayer (1) waives the required statutory notice of deficiency, (2) waives the corresponding prohibition on collection for ninety days under the Internal Revenue Code, and (3) waives his or her right to litigate the proposed deficiency in Tax Court. If the taxpayer disagrees with the proposed adjustment, a letter is issued with a copy of the examining agent's report. This letter provides the taxpayer a second opportunity to accept the proposed assessment and informs the taxpayer of his right to an administrative appeal. The letter also indicates that failure to respond within thirty days causes the assessment to be deemed final.[4] This letter is known as the thirty-day letter.

---

3. In their brief to this court, the Clarks argue that their claims against the defendants are based upon "negligent tax advice and potentially fraudulent concealment thereof." However, the amended complaint does not include allegations of fraudulent concealment; therefore, we decline

to consider this argument in rendering our decision.

4. Although the letter does not so indicate, at anytime during the appellate process with the IRS, the taxpayer may pay the adjustment and

¶ 16 With respect to the appeals process, if the taxpayer does not accept the findings of the examiner, he may request a review by the District Office. If the taxpayer disagrees with that decision, he may also request a review by the Appellate Division. The determination of the Appellate Division is the final decision of the IRS. However, if the taxpayer disagrees with the decision of the Appellate Division, the IRS issues a second letter, which constitutes the statutory notice of deficiency and informs the taxpayer of his right of appeal to the United States Tax Court.[5] According to this letter, the appeal with the Tax Court must be filed within ninety days; otherwise, the assessment is deemed final and the IRS collection process begins. This letter is known as the ninety-day letter. If the taxpayer files a petition with the Tax Court, that court reviews the entire assessment and issues the final decision. *See generally* 4 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income Estates and Gifts*, ch. 112 (2d ed.1992).

## II. OVERVIEW OF ACCOUNTANT MALPRACTICE

¶ 17 This is the first time this court has addressed the question of when a claim for accountant malpractice arises in the context of an IRS audit. Although the number of cases from other jurisdictions addressing this issue is limited, a review of the existing case law is useful in understanding the various theories upon which other courts have relied.

¶ 18 Some states hold that the statute of limitation begins to run when the incorrect tax return is filed or the bad tax advice is given. *See Ford's, Inc. v. Russell Brown & Co.*, 299 Ark. 426, 773 S.W.2d 90, 92–93 (1989);[6] *Consolidated Mgmt. Servs., Inc. v. Halligan*, 186 Ga.App. 621, 368 S.E.2d 148, 150 (1988).[7] These jurisdictions have not adopted a discovery rule for cases involving professional malpractice. Generally, of course, a taxpayer does not learn of a potential malpractice claim until the IRS conducts an audit. This line of cases is therefore problematic because the audit itself may not occur until after the statute of limitation has expired.

¶ 19 Other jurisdictions hold that the statute of limitation starts to run upon receipt of the thirty-day letter. *See Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130, 134 (Del.1974) (applying the discovery rule,

---

pursue a refund claim. In so doing, the taxpayer avoids the issuance of the statutory notice of deficiency. In addition, if the refund claim is denied, the taxpayer may bring suit in the United States District Court or in the United States Court of Federal Claims. *See generally* 4 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income Estates and Gifts*, ch. 112 (2d ed.1992).

**5.** The United States Tax Court does not require up front payment of the contested tax assessment prior to rendering its review. *See generally* 4 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income Estates and Gifts*, ch. 115 (2d ed.1992).

**6.** In Arkansas, in the absence of concealment of wrong, the statute of limitation for professional malpractice cases begins to run when the negligence occurs. *See Ford's, Inc.*, 773 S.W.2d at 92. In *Ford*, there was no claim of concealment or misrepresentation. In fact, when the appellants received the initial notice of deficiency, the appellees conceded that the IRS's position was at least partially correct and recommended that the appellants accept a proposed settlement. *See id.* at 91. That being the case, the court found "no compelling reason why [it] should adopt a different rule to be used in accounting malpractice cases." *Id.* at 92.

**7.** In *Consolidated Management Services,* the appellants brought their professional malpractice claim under section 9–3–25 of the Georgia Code, which provides a four-year statute of limitation for "breach of certain contracts; breach of implied promise." *See* 368 S.E.2d at 150. The appellants asked the court to toll the statute of limitation in the same manner as provided under section 9–3–72 of the Georgia Code; entitled "Foreign objects left in the body," which allows a patient to bring an action against a physician within one year of the discovery of a foreign object negligently left in his body. *Id.* In the alternative, the appellants asked the court to apply the discovery rule. *See id.* The court declined to apply section 9–3–72 to claims arising under section 9–3–25 and specifically held that the discovery rule only applies to claims involving realty and personal injury, and not contract claims. *Id.* Accordingly, the court held that a professional malpractice claim arises on "the date of the breach of the duty and not from the time when the extent of the resulting injury is ascertained nor from the date of the client's discovery of the error." *Id.* (internal quotations and citations omitted).

the court held the statute began to run upon receipt of the initial notice of the examiner's findings indicating the proposed deficiency assessment from the IRS); *Seebacher v. Fitzgerald, Hodgman, Cawthorne & King, P.C.,* 181 Mich.App. 642, 449 N.W.2d 673, 676 (1989) (same);[8] and *Brower v. Davidson, Deckert, Schutter & Glassman, P.C.,* 686 S.W.2d 1, 3 (Mo.Ct.App.1984) (same).[9] In these cases the plaintiffs did not await the final decision of the Tax Court, nor did they continue to rely on their accountant's advice and representations. In our view, these cases do not establish a reasonable test for the accrual of an accountant malpractice action because receipt of the thirty-day letter does not establish tax liability. If a taxpayer

8. In this case the plaintiff had no contact with the defendants after receiving the erroneous tax advice, except to pay for the legal services rendered. *See Seebacher,* 449 N.W.2d at 674. In fact, fourteen days after receiving the thirty-day letter, the plaintiff retained new counsel who confirmed that the legal advice given by the defendants was incorrect. *See id.* at 675. The court affirmed the dismissal of the action specifically holding that the statutory period began to run "when plaintiff discontinued defendants' legal services." *Id.*

9. The plaintiffs in *Brower* were the sole stockholders of two closely held corporations. *See* 686 S.W.2d at 2. They hired the defendants to implement a liquidation plan in twelve months in order to avoid paying capital gains taxes. *See id.* at 2. The defendants failed to do so, and the IRS sent them the thirty-day letter with the proposed deficiency "based upon the failure to distribute the corporate assets within the one-year period...." *Id.* at 3. As in this case, the plaintiffs appealed the assessment all the way to the Tax Court; however, the Tax Court never issued a final decision because the plaintiffs entered into a stipulation with the IRS. *See id.* On appeal, the plaintiffs argued that the statute began running on the day the stipulation was entered. *See id.* However, the court held the cause of action accrued on the date of the thirty-day letter because "[f]rom that point on, plaintiffs can scarcely claim that they did not know that they were exposed to a substantial tax liability by reason of the failure to complete the distribution of the corporate assets before January 26, 1973." *Id.*

10. In *International Engine,* the plaintiffs did not pursue an appeal with the Tax Court. Instead, they signed the appropriate forms accepting the deficiency assessment and agreeing to pay the taxes and penalty on the same day the IRS issued the ninety-day letter. *See* 38 Cal.Rptr.2d 150, 888 P.2d at 1283. Therefore, on appeal, the plaintiffs argued that the limitation period should commence to run on the day the ninety-day letter

disagrees with the proposed adjustment, he or she may pursue two appeals of right within the IRS—with the District Office and the Appeals Office.

¶ 20 The majority of jurisdictions hold that a cause of action for accountant malpractice accrues when the plaintiff receives the ninety-day letter; however, none of the cases noted herein involved an appeal to and a final judgment from the Tax Court. *See International Engine Parts, Inc. v. Feddersen & Co.,* 9 Cal.4th 606, 38 Cal.Rptr.2d 150, 888 P.2d 1279, 1287 (1995);[10] *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63, 67 (1985);[11] *LaMure v. Peters,* 122 N.M. 367, 924 P.2d 1379, 1383 (N.M.Ct.App.1996);[12] *Snipes v.*

was issued. *See id.* at 1282. The court reversed the court of appeals and held that the "[ninety-day letter] serves as a finalization of the audit process and the commencement of actual injury because it is the trigger that allows the IRS to collect amounts due...." *Id.* at 1285. In addition, the court acknowledged that "the date of deficiency assessment is not the point of 'irremediability'... because it is not equivalent to a final judgment. Indeed, the taxpayer has 90 days from receipt of the notice of deficiency to file a petition for redetermination of the deficiency." *Id.*

11. In *Streib,* the plaintiffs discharged their accountants when they learned of the potential defects in their tax returns. *See* 706 P.2d at 63. Instead of pursuing an appeal, nine months later they filed their malpractice claim. *See id.* The district court dismissed it holding the "injury occurred when the inadequate tax returns were filed." *Id.* The Idaho Supreme Court reversed holding that "no damage was suffered until the tax return was challenged and an assessment made by the [IRS]." *Id.* at 67.

12. Here, the plaintiffs also appealed the deficiency assessment in Tax Court based on the representations and advice of their accountant. The court, specifically relying on the holdings in *Chisholm v. Scott,* 86 N.M. 707, 526 P.2d 1300 (App.1974), and *Sharts v. Natelson,* 118 N.M. 721, 885 P.2d 642 (1994), held "that the point of discovery in accountant malpractice cases is the receipt of the [*statutory*] deficiency notice." *See LaMure,* 924 P.2d at 1382–83. In *Chisholm,* 526 P.2d at 1302, the court had reversed dismissal of the accountant malpractice action and held that "the statute may not be deemed to have run until four years after notice had been given by the IRS." However, the "notice" referenced by the court in *Chisholm* appears to have been the thirty-day letter, and not the ninety-day letter issued after a denial of a protest by the IRS

*Jackson,* 69 N.C.App. 64, 316 S.E.2d 657, 659 (1984);[13] *Wynn v. Estate of Dick Holmes,* 815 P.2d 1231, 1234 (Okla.Ct.App.1991);[14] *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex.1997);[15] *Mills v. Garlow,* 768 P.2d 554, 558 (Wyo.1989).[16] *See also* Michael J. Weber, Annotation, *Application of Statute of Limitations to Actions for Breach of Duty in Performing Services of Public Accountant,* 7 A.L.R.5th 852, 914–920, 1992 WL 767602 (2000). The courts in these jurisdictions concluded that the exposure to liability disclosed by the IRS in the ninety-day letter was the injury that formed the cause of action. This is sound reasoning given that in all these cases the plaintiffs did not complete an appeal of right with the Tax Court; instead they either settled or accepted liability. In addition, none of the plaintiffs alleged ongoing reliance on the representations of their accountant(s) during their appeals. In this case, by contrast, the ninety-day letter only provided notice of a "potential legal injury;"

it was not the final decision. The Clarks, on defendants' advice, chose to appeal to the United States Tax Court; if that court had not ultimately found liability, the Clarks would not have a malpractice claim.

¶ 21 In *Peat, Marwick, Mitchell & Co. v. Lane,* the question before the court was precisely the same as presented in this case: whether the commencement of the limitation period in accounting malpractice occurs when the taxpayer receives the ninety-day letter or when the Tax Court renders its final decision. *See* 565 So.2d 1323, 1325 (Fla.1990). As in this case, the plaintiffs in *Peat Marwick* "believed that their accountant's advice was correct, and they in fact proceeded on that advice to challenge the IRS's determination." *Id.* at 1327. The court premised its analysis on the rule that a cause of action for negligence does not accrue "until the existence of a redressable harm or injury has been established and the injured party knows

Appeals Office. *See id.* at 1301. In fact, the opinion does not mention any appeal on the part of the plaintiff. With respect to *Sharts,* there the court declined to adopt the principle that a cause of action for attorney malpractice does not accrue until the underlying litigation, including appeal rights, has concluded. *See LaMure,* 924 P.2d at 1382.

**13.** In *Snipes,* the plaintiff, with the assistance of the defendants, contested the assessment with the IRS's Appeals Office. *See* 316 S.E.2d at 658. However, the plaintiff settled with the IRS rather than pursue an appeal to the Tax Court. *See id.* The question was whether a claim for accountant malpractice arises when the accountant gives the erroneous tax advice or when the IRS notifies the plaintiff of the assessment. *See id.* at 659. The court reversed the district court's grant of summary judgment in favor of the defendants based on the expiration of the statute of limitation and held that the cause of action "did not fully arise until ... the assess[ment] by the I.R.S." *Id.* at 661.

**14.** In this case, the plaintiffs also did not pursue an appeal with the Tax Court. Instead, they filed their cause of action within one year after receiving the ninety-day letter. *See Wynn,* 815 P.2d at 1233. The court affirmed the trial court's ruling that the plaintiffs's action was not barred by the statute of limitation and held that "ascertainable detriment occasioned by the negligence of [defendant] was not established until [the plaintiffs received the ninety-day letter], when the IRS notified [the plaintiffs] of the interest assessment." *Id.* at 1234.

**15.** The plaintiffs in *Murphy* were corporate stockholders who wanted to avoid recognizing any taxable gain on the sale of equipment. *See* 964 S.W.2d at 267. The record established that "plaintiffs all knew that an IRS audit was likely and that the IRS would probably challenge the sales price allocation." *Id.* at 269. Rather than await the results of their appeal to the Tax Court, they settled with the IRS. *See id.* at 267. On appeal, the defendants argued the claim arose "when the taxpayer knows or should know that the advice he received was faulty, and no later than the IRS's issuance of a formal deficiency notice." *Id.* at 269. The court held that "under the discovery rule, such an action accrues, not when injury becomes certain, but when the claimant should know of his injury." *Id.* at 271.

**16.** Under section 1–03–107 of the Wyoming Code, there is a two-year statute of limitation for professional malpractice actions. *See Mills,* 768 P.2d at 555. The plaintiffs in *Mills* protested the proposed adjustment pursuant to the thirty-day letter. *See id.* However, when their appeal was denied, rather than proceed with their appeal of right to the IRS Appeals Office, they signed the forms acknowledging liability (and waived the statutory notice of deficiency). *See id.* Under these facts, the court reversed the summary judgment in favor of the defendants, based on a statutory time-bar, and held that the statute of limitation commenced "at the time of the statutory notice of deficiency or, in the alternative, at the equivalent time of taxpayer agreement with the IRS, precluding the otherwise required notice." *Id.* at 557.

or should know of either the injury or the negligent act." *Id.* at 1325. In concluding that it would be inequitable for the complaint to be dismissed, the court evaluated the facts as follows:

> If we were to accept [Peat Marwick's] argument [that an IRS deficiency determination conclusively establishes an injury upon which to base a professional malpractice action], the Lanes would have had to have filed their accounting malpractice action during the same time that they were challenging the IRS's deficiency notice in their tax court appeal.... In the tax court, the Lanes would be asserting that the deduction Peat Marwick advised them to take was proper, while they would simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that Peat Marwick's advice was malpractice. To require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified.

*Id.* at 1326. The court then held that "consistent with the holdings of numerous attorney malpractice cases, ... until the Tax Court action was final, the Lanes did not have an action for malpractice." *Id.* The court explained that

> [t]he Lanes did not suffer redressable harm until the tax court entered judgment against them. Until that time, the Lanes knew only that Peat Marwick might have been negligent; however, if the tax court did not uphold the deficiency, the Lanes would not have a cause of action against Peat Marwick for accounting malpractice.

*Id.* at 1325. We find the reasoning of the Florida Supreme Court persuasive.

## III. CLARKS' MALPRACTICE CLAIM

■ ¶ 22 The Clarks' malpractice action was brought pursuant to section 78–12–25(3) of the Utah Code, which provides that "[a]n action may be brought within four years: .... (3) for relief not otherwise provided by law." The general rule regarding statutes of limitation is that the limitation period does not begin to run until "the happening of the *last* event necessary to complete the cause of action." *Berenda v. Langford*, 914 P.2d 45, 50 (Utah 1996) (internal quotation and citation omitted) (emphasis added). Therefore, "a plaintiff must wait until some harm manifests itself .... [u]ntil a plaintiff suffers *actual harm* or damages...." *Seale v. Gowans*, 923 P.2d 1361, 1364 (Utah 1996) (emphasis added). This rule promotes judicial economy by commencing the limitation period "at the time [the action] becomes remediable in the courts...." *Stokes v. Van Wagoner*, 1999 UT 94, ¶ 7, 987 P.2d 602.

■ ¶ 23 Deloitte contends the Clarks sustained actual harm or injury when they received the ninety-day letter, because this was the result of final review by the IRS and it thereby created a presumption of liability. We disagree. Under the circumstances of this case, where an appeal from the IRS decision was taken "there [was] no loss or injury unless a third party, the [Tax Court], decide[d] to assess a tax deficiency." *Snipes*, 316 S.E.2d at 661; *see also, Bronstein v. Kalcheim & Kalcheim, Ltd.*, 90 Ill.App.3d 957, 46 Ill.Dec. 374, 414 N.E.2d 96, 98 (1980) (dismissing the plaintiff's claim as premature because "[t]he issuance of the notice of deficiency does not establish the plaintiff has suffered a loss .... because plaintiff's tax liability has not yet been determined in the Tax Court, it is clear that plaintiff has not yet suffered any actual loss."); *Berberich v. Payne & Jones*, 3 F.Supp.2d 1199, 1203–04 (1998) (dismissing the claim as premature and explaining that "[i]f plaintiffs are successful on their claim with the IRS, they apparently will not have a malpractice claim against defendant...."). Accordingly, there was no actual injury until the appeal with the Tax Court was resolved.

■ ¶ 24 To prevent the filing of premature claims, this court generally requires litigants to "exhaust applicable administrative remedies." *State Tax Comm'n v. Iverson*, 782 P.2d 519, 524 (Utah 1989). Otherwise, without actual injury, a litigant would have to file a malpractice action before knowing the ultimate result of an appeal on the merits. In addition, if litigants filed claims without pursuing available appeals of right, the principle of mitigation of damages would be un-

dermined. This principle is underscored by the facts in this case. By pursuing their administrative appeal with the Tax Court, the Clarks obtained a reduction of their tax liability from the original $262,298 assessment by the IRS to the $129,433 judgment entered by the Tax Court.

¶ 25 Contrary to Deloitte's assertion, awaiting the result of a pending appeal will not often lead to stale claims. Even when an appeal of right is available, the statute of limitation will begin to run unless the litigant actually pursues that appeal. *See, e.g., Turley v. Wooldridge,* 230 Cal. App.3d 586, 593, 281 Cal.Rptr. 441 (1991). This prevents a client from causing the limitation period to be indefinitely delayed by deferring pursuit of available remedies. In addition, the limitation period will also begin to run when no appeal of right is available, *see, e.g., Troche v. Daley,* 217 Cal.App.3d 403, 410–412, 266 Cal.Rptr. 34 (1990), or when the case is settled because "the settlement represents the litigant's agreement to forgo further remedies...." *Laird v. Blacker,* 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691, 705 (1992) (Mosk, J., dissenting). Finally, awaiting the outcome of the appeal process before triggering the limitation period will prevent professionals from defeating malpractice claims by continuing to represent or advise the client through the appeals process until after the statutory period has expired.[17]

¶ 26 Deloitte points out that there are dangers associated with delaying the accrual of a cause of action, such as fading memories and loss of evidence. However, unlike other forms of professional malpractice, an accountant's negligence is almost always, and certainly in this case, memorialized in documents. In this case, there are documents from the two appeals within the IRS, hearing transcripts, a decision from the Tax Court, and court pleadings, all of which provide an adequate record of the actions that form the substance of the Clarks' malpractice action.

¶ 27 It would be unfair and impractical to require a client to pay the tax assessment and contemporaneously file a malpractice action, while at the same time pursuing a refund claim in the district court or Tax Court. If a taxpayer's cause of action accrued prior to the entry of the final judgment on appeal, the taxpayer would be forced to take the position before the Tax Court that the professional's advice was correct, while arguing in the malpractice action that the advice was wrong. That circumstance would not only contravene equity principles and good policy, but also create the risk of inconsistent verdicts and raise problems regarding judicial admissions and estoppel. *See Condas v. Condas,* 618 P.2d 491, 495–96 (Utah 1980) ("It is well settled that a party who has taken a position in prior litigation and has obtained relief on the basis of it cannot maintain the opposite position in another action.").

¶ 28 The crux of the plaintiffs' argument is that they trusted Calder's advice. Without a doubt,

> [a] person needs special training to know whether his or her tax return has been erroneously prepared.... In the relationship of accountant and client, the trust and confidence that the client places in the professional person places him in a vulnerable position should that trust and confidence be misplaced. It is the policy of the law to encourage that trust and confidence; likewise it is the duty of the law to protect the client from the negligent acts of the professional person.

*Chisholm,* 526 P.2d at 1302.

¶ 29 Applying these considerations, we return to the allegations in the complaint. According to the Clarks, when they received the initial notice of the examiner's findings, they contacted Calder, who assured them the tax advice and returns were correct. In addition, Calder advised the Clarks to appeal the assessment with the IRS District Office pursuant to the thirty-day letter. Once that appeal was denied, the Clarks again contacted Calder. He continued to assure the

---

**17.** We note that federal courts have extended equitable relief in situations where the claimant has been induced by his adversary's misconduct into allowing the filing deadline to pass. *See Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 235, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *see also Wynn v. Estate of Holmes,* 815 P.2d 1231, 1235 (Okla.Ct.App.1991) (holding that accountant's advice to taxpayers to protest the IRS assessment tolled the statute of limitation).

Clarks of the accuracy of the professional advice and continued to advise the Clarks to appeal the assessment of liability. The Clarks relied on these representations and appealed the assessment with the IRS Appeals Office. When this appeal was denied, again, relying on Calder's superior knowledge and advice, the Clarks pursued their appeal of right to the United States Tax Court as per the ninety-day letter. In June 1994, the Tax Court issued its opinion reducing the amount of the IRS's original assessment. Accordingly, the court entered its final judgment on September 16, 1994.

¶ 30 After reviewing the allegations in the complaint, and in light of the above-mentioned considerations, we conclude that the hardship imposed on the Clarks by a dismissal of their cause of action outweighs any harm to Deloitte. Given that the Clarks claimed to have acted on a good-faith belief in Calder's representations, pursuant to the fiduciary relationship between an accountant and a client, they were justified in following defendants' advice to pursue an appeal and their case should be tried on the merits.[18] *See Glus,* 359 U.S. at 235, 79 S.Ct. 760. By pursuing all their administrative appeals, the Clarks preserved the essential evidence in this case. Thus, the general policy regarding stale claims is not applicable. In addition, the Clarks mitigated their damages by obtaining a reduction of the original $262,298 assessment by the IRS to the $129,443 final judgment entered by the Tax Court in September 1994.

¶ 31 Finally, we note that this action is in essence a claim for indemnification. Had the IRS sued the Clarks to collect the tax liability assessed in the thirty-day letter, the Clarks would have been able to commence a third-party action against Deloitte under rule 14 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 14(a). Under those circumstances, Deloitte would not have been entitled to a statute of limitation defense because only after the Tax Court's final decision would the cause of action for indemnification accrue. *See, e.g., Wandrey v. McCarthy,* 804

F.Supp. 1384, 1386–87 (D. Kansas 1992). Also, if the Clarks had received erroneous advice from a tax attorney, as opposed to an accountant, their claim for malpractice would not have accrued until the Tax Court's final decision. *See Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 56 (1990); *Amfac Distribution Corp. v. Miller,* 138 Ariz. 152, 673 P.2d 792, 793 (1983).

## CONCLUSION

¶ 32 We hold that a cause of action for accountant malpractice does not accrue until the entry of the final judgment of the United States Tax Court when plaintiffs continue reasonably to rely on accountants' advice in pursuing administrative review and appeals of right. Accordingly, the Clarks' cause of action was timely and the trial court erred in granting Deloitte's motion to dismiss. We reverse and remand.

¶ 33 Chief Justice HOWE, Justice DURRANT, Justice WILKINS, and Judge HALLIDAY concur in Justice DURHAM'S opinion.

¶ 34 Having disqualified himself, Associate Chief Justice RUSSON did not participate herein. Judge BRUCE K. HALLIDAY from Seventh District Court sat.

---

**18.** Of course, whether the Clarks acted reasonably under the circumstances and whether the defendants' representations were intentional or negligent are questions of fact. *See Berenda,* 914 P.2d at 54.