EDGAR W. SNIPES v. GEORGE W. JACKSON, L. H. VEAZEY, AND THOMAS, KNIGHT, TRENT, KING AND COMPANY

No. 8314SC695

(Filed 19 June 1984)

**1. Limitation of Actions § 4.2— negligence action against attorney and accountant concerning the sale of stock—action accruing at date of tax assessment**

In an action instituted by plaintiff against his attorney, accountant and the accountant's firm seeking damages for the defendants' negligent rendering of professional services, the trial court erred in granting summary judgment on the possible basis that the statute of limitations had expired where the sale transaction, upon which defendants' advice had been sought, was closed on 30 December 1976, effective 1 January 1977; where on 4 March 1980 the Internal Revenue Service assessed a deficiency against plaintiff in the amount of $48,659.43 as a result of the sales transaction; and where plaintiff instituted this action in 1981. Under the facts, neither apparent nor undiscovered loss occurred to plaintiff until the I.R.S. notified plaintiff of its assessment, and G.S. 1-15(c) requires as an element of the cause of action for malpractice that plaintiff suffered some loss or injury, whether it be apparent or hidden.

**2. Accountants § 1— malpractice action—sufficiency of evidence**

The trial court erred in granting summary judgment for defendant accountant in an action seeking damages for the accountant's negligent rendering of professional services in assisting plaintiff in the sale of his oil company where the forecast of evidence raised an issue regarding the accountant's knowledge of a transfer of stock to plaintiff prior to the sale which resulted in costly tax consequences, and where an issue of the accountant's negligence in failing to advise plaintiff of the tax consequences regarding this transfer was raised in an affidavit of an expert witness.

**3. Attorneys at Law § 5.1— malpractice action—sufficiency of evidence**

A trial court erred in entering summary judgment for defendant attorney in an action instituted by plaintiff seeking damages for the defendant's negligent rendering of professional services. Plaintiff's forecast of evidence raised questions of liability regarding the attorney's handling of the sale of a company in which plaintiff was the majority stockholder which resulted in a large assessment of taxes. The evidence indicated that the attorney admitted he had never discussed a stock transfer which resulted in the tax consequences with defendant accountant; that he was aware of the agency relationship between plaintiff and the other shareholders; that he did not draft any documents showing this relationship and that, although he was aware of the installment sale aspects of the sale, he indicated to plaintiff that it would be all right to transfer all stock in his company to plaintiff prior to the sale. Further, based on this evidence and other evidence in the depositions, another attorney filed a sworn affidavit indicating that the defendant attorney's practice may not have been in accordance with the standard of care of attorneys practicing in North Carolina.

APPEAL by plaintiff from *Lee, Judge.* Judgment entered 21 April 1983 in Superior Court, DURHAM County. Heard in the Court of Appeals 12 April 1984.

Plaintiff instituted an action against his attorney, accountant and the accountant's firm in 1981 seeking damages for the defendants' negligent rendering of professional services. After considering the pleadings, depositions, affidavits, answers to interrogatories and exhibits, the trial court granted defendants' motions for summary judgment and plaintiff appealed. We believe that the record on appeal shows that genuine issues of fact exist regarding the negligence of the defendants and therefore reverse.

Plaintiff alleged in his complaint that he sought the advice of defendant George Jackson, a Roxboro attorney, and defendant L. H. Veazey, a Roxboro accountant, in 1976 regarding the sale of Snipes Brothers Oil Company, Inc. Plaintiff was the majority stockholder in this family owned corporation. Prior to the sale of the business to Community Products, Inc. (hereinafter Community) Veazey advised plaintiff to structure the sale of plaintiff's shares in installments in order to incur the smallest tax liability. Plaintiff accepted this advice and then retained Jackson to assist him and the other shareholders in the actual sale of stock. The remaining shareholders intended to sell all their shares and receive cash in one payment.

Jackson assisted in the drafting of the documents regarding the sale of Snipes Brothers Oil Company, Inc. Plaintiff alleged that both Veasey and Jackson discussed the manner in which the sale was to be structured and approved the sale documents. The sales transaction was closed on 30 December 1976, effective 1 January 1977. The structure of the actual sale involved the transfer of all stock in Snipes Brothers Oil Company, Inc. to plaintiff followed by the transfer of all shares to Community. Soon after the sale plaintiff gave each shareholder his or her share of the payment. It is uncontested that the sale was structured in this manner because of Community's desire to deal with only plaintiff at the closing.

Veazey thereafter prepared plaintiff's 1977 and 1978 tax returns showing the sale of plaintiff's stock as an installment sale. These returns were audited, and on 4 March 1980 the Internal Revenue Service assessed a deficiency against plaintiff in the

amount of $48,659.43. It is uncontested that this assessment was due to the fact that immediately prior to the sale of stock, plaintiff's family transferred their shares to plaintiff who then transferred them to Community. The terms of the sales contract indicated that plaintiff was the owner of all shares of stock in Snipes Brothers Oil Company, Inc.; that plaintiff was selling 1,429 shares of the stock to Community in return for cash and that plaintiff was selling the remaining 2,572 shares in return for installment payments. Because of this arrangement the I.R.S. argued that plaintiff did not qualify for the favorable installment sale treatment.

Plaintiff timely protested the assessment, and both defendants assisted him in this protest. On 1 December 1980, plaintiff settled with the I.R.S. by paying $24,200.13 and $4,237.54 as a late payment. Plaintiff was also assessed $6,760.78 by the North Carolina Department of Revenue.

Plaintiff alleged the following in his complaint:

22. That the defendants, for consideration and being aware of the plaintiff's desire to receive the most favorable tax treatment, undertook to represent and advise the plaintiff in planning and executing the aforesaid sale; that defendants were consulted about, drafted, modified, and/or reviewed the documents of sale used in effecting said sale; that the defendants were aware of the transfer of all shares of Snipes Brothers Oil Company, Inc. to the plaintiff prior to transferring the same to Community; and that the defendants prepared, advised, and/or assisted in the preparation of plaintiff's tax returns for the 1977 and 1978 tax years, and participated in subsequent audits, and/or appeals from assessments resulting from said audits.

20. That in rendering professional services to the plaintiff, including but not limited to those set forth in the preceding paragraphs, the defendants, and each of them, were negligent in that they failed to exercise the proper degree of professional care in ascertaining and planning for the Federal and State tax consequences of the aforesaid sale by plaintiff.

21. That as a direct and proximate result of the aforesaid negligence, the plaintiff has been damaged, both directly and consequentially, in an amount in excess of $10,000.00.

In his answer defendant Veazey alleged that he had no knowledge of the transfer of all shares of stock to plaintiff prior to the 1979 audit. Defendant Jackson alleged in his answer that he and plaintiff specifically agreed that Jackson would not advise or represent plaintiff regarding tax implications of the sale; and that plaintiff informed him that Veazey was plaintiff's tax advisor and had approved the documents of sale. Both defendants pled the statute of limitations as a defense. Veazey also pled the defense of contributory negligence.

Plaintiff replied that defendants were equitably estopped from pleading the statute of limitations, because defendants assisted him in the appeal of the tax assessments and at no time indicated their negligence was the cause of the assessments.

Plaintiff appeals from the granting of defendants' motions for summary judgment.

*Maxwell, Freeman, Beason and Morano, by James B. Maxwell and Mark R. Morano, for plaintiff appellant Edgar W. Snipes.*

*Spears, Barnes, Baker & Hoof, by Alexander H. Barnes, for defendant appellee George W. Jackson.*

*Mount, White, King, Hutson & Carden, by Richard M. Hutson, II and Elizabeth R. Stuckey, for defendant appellees Veazey and Thomas, Knight, Trent, King and Company.*

ARNOLD, Judge.

Since the trial court did not specify the grounds upon which defendants' motions for summary judgment were granted, this Court must examine every basis for the rulings. The record on appeal indicates that summary judgment in defendants' favor could have been entered because the trial court believed plaintiff's action was barred by the statute of limitations. In the alternative the court may have decided there was no issue of fact regarding the allegations of negligence. Summary judgment in defendant Veazey's favor also could have been entered because the court found no issue of fact as to plaintiff's contributory negligence.

STATUTE OF LIMITATIONS DEFENSE

[1] The parties stipulated that the action was commenced against defendant Jackson on 4 September 1981 and against defendant Veazey and his employer on 19 November 1981. Defendants contend that the cause of action accrued at the time that the sale of stock to Community became effective on 1 January 1977. They argue that summary judgment in their favor was proper because the malpractice action was governed by G.S. 1-15(c) and should have been brought within four years of the stock sale. Plaintiff initiated his action after this period had expired.

Plaintiff argues on appeal that his action was not barred by G.S. 1-15(c) because it was commenced within three years of the "last act" of defendants, because defendants are equitably estopped from raising the statute of limitations defense and because the statute of limitations did not begin to run until the I.R.S. notified plaintiff of the assessment. After examining the language in G.S. 1-15(c), the general law involving statutes of limitations and pertinent law in other jurisdictions involving the accrual of malpractice actions in tax matters, we conclude as a matter of law that plaintiff's claim was not barred by G.S. 1-15(c). Plaintiff's action did not accrue until he was notified of the tax assessment.

A number of jurisdictions generally have concluded that a cause of action involving malpractice in tax matters does not accrue until the I.R.S. assesses a deficiency. Annot., 26 A.L.R. 3d 1438 (1969). The North Carolina courts have not specifically addressed this issue. After examining other jurisdictions' reasons for starting the limitation period from the date of assessment, we have decided that equity requires us to apply the same accrual date to the situation here.

In *Atkins v. Crosland*, 417 S.W. 2d 150 (Tex. 1967), the taxpayer sued his accountant for negligently changing the method of tax accounting for taxpayer's business without first obtaining permission from the Commissioner of Internal Revenue. Taxpayer was subsequently assessed with a tax deficiency. The lower court granted defendant's motion for summary judgment on the ground that the taxpayer's action was barred by the statute of limitations. The Texas Supreme Court reversed and concluded that taxpayer's action did not accrue until the deficiency was assessed.

The Court applied the general principle that a legal injury must be sustained before a cause of action arises. The Court emphasized:

> Prior to assessment the plaintiff had not been injured. That is, assessment was the factor essential to consummate the wrong—only then was the tort complained of completed. If a deficiency had never been addressed, the plaintiff would not have been harmed and therefore would have had no cause of action.

*Id.* at 153.

The Supreme Court of Delaware applied the same accrual date in a malpractice action against an accountant for similar misconduct. *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* 330 A. 2d 130 (Del. Supr. 1974). The Delaware court concluded that the facts provided an exception to the general rule that the statute of limitations begins to run at the time of the wrongful act and that ignorance of a cause of action, absent concealment or fraud, does not abate the running. The Court, adopting language from the court below, stated:

> [T]he statute should not run against an ignorant plaintiff, particularly where the "triggering" of the cause of action depends on the action of a third party. This approach has obvious application to a taxpayer who does not know he has suffered a loss until the taxing authority asserts a claim. In such a triangular situation it would clearly work an injustice to expect Artisan's [taxpayer] to anticipate, or even be aware of, a possible injury.

*Id.* at 133. Just as the taxpayers in the foregoing opinions, plaintiff here suffered no legal harm or loss until the tax deficiency was assessed on 4 March 1980. Until this time neither defendant was liable to plaintiff.

Our decision to start the running of the limitation period from the date of assessment is not inconsistent with present North Carolina law. G.S. 1-15(a), a general provision applicable to all statutes of limitations, provides: "Civil actions can only be commenced within the periods prescribed in this Chapter, *after the cause of action has accrued,* except where in special cases a different limitation is prescribed by statute." (Emphasis added.) "In no event can a statute of limitations begin to run until plain-

tiff is entitled to institute action. (Citation omitted.)" *Raftery v. Construction Co.*, 291 N.C. 180, 183, 230 S.E. 2d 405, 407 (1976).

G.S. 1-15(c) provides for a special limitation period for malpractice actions against professionals. The statute provides, in pertinent part:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is . . . economic or monetary loss . . . which originates under circumstances making the . . . loss . . . not readily apparent to the claimant at the time of its origin, and the . . . loss . . . is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action. . . .

It is uncontested that the action "giving rise to" the tax assessment was the sales contract dated 1 January 1977. Defendants concede that the loss in taxes attributable to this sale was not apparent to plaintiff until he was notified of the assessment on 4 March 1980. Defendants argue, and the lower court apparently agreed, that G.S. 1-15(c) required plaintiff to commence suit against defendants within one year of the date of the tax assessment or "discovery of the loss."

A close reading of the language in G.S. 1-15(c) refutes defendants' argument. G.S. 1-15(c) refers to an action arising out of the performance or failure to perform professional services which results in either immediate injury or loss or such injury or loss "which is not readily apparent to the claimant at the time of its origin."

In the facts before us neither apparent nor undiscovered loss occurred to plaintiff on 1 January 1977 when the sale occurred.

No loss occurred until the I.R.S. notified plaintiff of its assessment. Although the statute of limitations set out in G.S. 1-15(c) begins to run at the time of the last negligent act or breach of some duty, and not the time actual damage is discovered or fully ascertained, this statute still requires as an element of the cause of action for malpractice that plaintiff suffer some loss or injury, whether it be apparent or hidden. Plaintiff's cause of action against defendants was not complete and did not fully arise until he was assessed by the I.R.S.

If plaintiff had commenced his action prior to the date of assessment, defendants could have properly objected on the ground that the action was premature. No loss or injury had occurred before the assessment. Moreover, there was a reasonable belief that the I.R.S. would recognize an installment sale of plaintiff's shares. Although the document of sale indicated that plaintiff was the owner of all shares in Snipes Brothers Oil Company, Inc. and was selling all shares to Community, the document also indicated that 1,429 shares were being sold for cash and the remaining 2,572 were being sold in installments. There is also undisputed evidence in the record that soon after the sale plaintiff submitted to each shareholder full payment of the sales price for his or her shares. Based on this evidence, the I.R.S. could have agreed that plaintiff was merely acting as an agent for the other shareholders in the sale of their stock to Community.

Finally, we emphasize that the malpractice action against Veazey and Jackson is not directly analogous to professional negligence suits against doctors or attorneys in general. Here there is no loss or injury unless a third party, the I.R.S., decides to assess a tax deficiency.

### SUMMARY JUDGMENT AGAINST DEFENDANTS

Having concluded that summary judgment in defendants' favor would have been improper on the ground that plaintiff's action was barred by the statute of limitations, we must now decide whether summary judgment was proper because no genuine issue of fact existed regarding defendants' negligence. In considering this question we are guided by the following principles:

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). In ruling on the motion the court must consider the evidence in the light most favorable to the nonmovant, and the slightest doubt as to the facts entitles him to a trial. *Miller v. Snipes*, 12 N.C. App. 342, 183 S.E. 2d 270, *cert. denied*, 279 N.C. 619, 184 S.E. 2d 883 (1971).

> Summary judgment is, furthermore, a device by which a defending party may force the claimant to produce a forecast of claimant's evidence demonstrating that claimant will, at trial, be able to make out at least a *prima facie* case or that he will be able to surmount an affirmative defense.

*Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E. 2d 325, 335 (1981).

### PLAINTIFF'S FORECAST OF EVIDENCE

The plaintiff in the case before us alleged that defendants, in rendering professional services regarding plaintiff's sale of stock to Community, "were negligent in that they failed to exercise the proper degree of professional care in ascertaining and planning for the Federal and State tax consequences of the aforesaid sale by plaintiff." When the evidence appearing in the record is viewed in the light most favorable to plaintiff, it raises material issues of fact regarding this negligence.

In his deposition plaintiff testified that prior to the sale of the stock in Snipes Brothers Oil Company, Inc., he consulted with his accountant, defendant Veazey. Veazey indicated that there would be a substantial tax saving if plaintiff sold his stock in installments. Plaintiff told Veazey he wanted to proceed with the sale in this manner. Plaintiff later learned from Community that it preferred to deal with only one shareholder. Plaintiff informed Veazey of this request, and Veazey advised plaintiff to get legal help. Plaintiff then conferred with defendant Jackson. He told Jackson he was receiving tax advice from Veazey and related Community's desire to deal solely with plaintiff. Jackson indicated that at the date of closing all stock could be placed in plaintiff's name, and that plaintiff could then transfer the stock to Community. After plaintiff was paid for the stock, he could then give each shareholder his share of the payment.

Plaintiff testified that in late December 1976 he carried a proposed sale document, drafted by Community's attorney, to Jackson's office. This contract stated that plaintiff was the owner of all shares of outstanding stock in Snipes Brothers Oil Company, Inc. Plaintiff told Jackson that he had discussed the tax consequences with Veazey and asked Jackson to call Veazey and verify this fact.

Jackson testified in his deposition that he telephoned Veazey either the 28th or 29th of December 1976 at plaintiff's request. Jackson asked Veazey if he was familiar with the sales transaction. According to Jackson, Veazey responded that he was and that the transaction was all right from a tax point of view. Jackson admitted that he did not discuss the stock transfer with Veazey. He also admitted that he was aware plaintiff was acting as an agent for his family during the sales transaction, and that he did not discuss with or propose to plaintiff the drafting of an agreement describing this agency relationship.

In his deposition Veazey testified that he did not recall talking with Jackson prior to the sale. Plaintiff testified, however, that prior to the sale he told Veazey that all stock would be transferred to him (plaintiff) before it was transferred to Community.

NEGLIGENCE OF DEFENDANT VEAZEY

[2] It is generally recognized that an accountant may be held liable for damages naturally and proximately resulting from his failure to use that degree of knowledge, skill and judgment usually possessed by members of the profession in a particular locality. 1 Am. Jur. 2d *Accountants* § 15 (1962). An accountant may be liable for loss or damage due to erroneous tax advice or management. *Id.* at § 18.

The foregoing forecast of evidence raises an issue regarding Veazey's knowledge of the transfer of all stock to plaintiff prior to the sale to Community. An issue of Veazey's negligence in failing to advise plaintiff of the tax consequences regarding this transfer was raised in an affidavit of an expert witness. Mark Stephens, a certified public accountant practicing in Durham, swore that he was familiar with the generally accepted standards for the practice of accounting in North Carolina during 1976 and

1977. Based upon the depositions of the parties, Stephens swore that he possessed the following opinions:

12. . . . [I]t is my opinion that generally-accepted stand-ards of accounting practice in North Carolina in 1976 and 1977 would have required that an accountant advise, warn, or otherwise inform his client that transferring all of the stock in a corporation to one person (such as his client) from all the other shareholders immediately prior to transferring that stock or redeeming it, may have an adverse impact on that sale qualifying for favorable tax treatment as an installment sale. It is my further opinion that, under such circumstances, an accountant should warn or advise his client to have that accountant or some other party investigate the circumstances of such a transfer, and to determine what way, if any, such a transfer may be made without disqualifying the sale for in-stallment treatment under I.R.C. § 453, especially in view of the then-applicable requirement that not more than thirty percent (30%) of the selling price may be received in the first year.

13. . . . [I]f it further be found that Mr. Veazey had reviewed the closing documents referred to in paragraph 11 (final documents of sale) or was familiar with their contents, it is also my opinion that it would not have been in accord-ance with generally-accepted standards of accounting practice in North Carolina in 1976 and 1977 for that accountant to in-dicate to his client or his client's attorney that the closing documents were acceptable, when those documents indicate that Mr. Snipes was the owner of all of the stock and was to receive all of the consideration therefor, when in fact for ap-proximately 1,101 of the 4,001 shares involved, Mr. Snipes was serving as only an agent or conduit for his family. . . .

Since the facts asserted by plaintiff must be accepted as true and since the affidavit of Stephens must be indulgently treated, the trial court erred in granting summary judgment in defendant Veazey's favor.

This Court must also consider Veazey's defense of contrib-utory negligence as a proper ground for summary judgment. Veazey alleged in his answer that plaintiff was contributorily negligent in failing to disclose to Veazey the "purchase and/or

transfer of all the stock of Snipes Brothers Oil Company, Inc. to himself and further, by actually transferring and/or purchasing said stock." Plaintiff's deposition clearly disputes this allegation and therefore raises an issue of fact for the jury.

## NEGLIGENCE OF DEFENDANT JACKSON

[3] An attorney who engages in the practice of law and contracts to prosecute an action for his client

> is answerable in damages for any loss to his client which proximately results from a want of that degree of knowledge and skill ordinarily possessed by others of his profession similarly situated, or from the omission to use reasonable care and diligence, or from the failure to exercise in good faith his best judgment in attending to the litigation committed to his care. (Citations omitted.)

*Hodges v. Carter*, 239 N.C. 517, 520, 80 S.E. 2d 144, 146 (1954). Plaintiff's forecast of evidence clearly raises questions of liability regarding defendant Jackson's handling of the sales transaction.

Jackson admitted that he never discussed the stock transfer to plaintiff with defendant Veazey; that he was aware of the agency relationship between plaintiff and the other shareholders; that he did not draft any document showing this relationship and that, although he was aware of the installment sale aspects of the sale to Community, he indicated to plaintiff that it would be all right to transfer all stock in Snipes Brothers Oil Company, Inc. to plaintiff prior to the sale. Based on this evidence and other evidence in the depositions, John Crill, a Durham attorney, filed a sworn affidavit. Crill swore that he was familiar with the standard of care of practicing attorneys in North Carolina, including those engaged in the representations of small corporations. He further swore:

> 5. . . . [I]t is my opinion that an attorney practicing law in accordance with the standard of care for attorneys practicing in North Carolina in 1976 and 1977, when representing a client in a sale of corporate stock involving acknowledged serious tax consequences as a result of an installment sale, the attorney would be required to consult with qualified tax advisors prior to consummating that transaction, and to review in detail the final closing documents with that tax advisor. This is especially so when the attorney holds himself

out as not being fully qualified in tax matters, and disclaims responsibility therefor. It is my further opinion that the attorney is required to review the final documents with that tax advisor and to obtain from that advisor an assurance that the final transaction, as structured by the closing documents, accurately reflects the intended plan for the sale from a tax point of view.

6. It is my further opinion that it is not in accordance with the standard of care of attorneys practicing in North Carolina in 1976 and 1977 for an attorney, who does not regard himself to be an authority on tax matters, to nevertheless proceed to represent a client in the sale of corporate stock involving an installment sale without obtaining the assistance and guidance of a qualified tax advisor.

7. It is my further opinion that it is not in accordance with the standard of care for attorneys practicing law in North Carolina in 1976 and 1977 to negotiate and conclude, on behalf of his client, a contract of sale that states that his client is the owner of all outstanding shares of stock in a corporation and that he is to receive all the consideration for that stock, when in fact it is known and acknowledged by that attorney that a substantial portion of that stock is owned by his client's family members, and that he is merely acting as agent for his family members. It is my further opinion that it is not in accordance with the standard of care for attorneys practicing law in North Carolina in 1976 and 1977 for an attorney to allow stock to be transferred from other individuals to his client as their agent without a separate agreement of some type being prepared reflecting that such an agency relationship had been created.

The pleadings, depositions of the parties, exhibits and affidavits of expert witnesses forecast evidence which necessitates a jury trial.

For the reasons stated above, defendants' motions for summary judgment were improvidently granted.

Reversed and remanded.

Judges HEDRICK and PHILLIPS concur.