THIRD DIVISION
May 5, 2010

No. 1-09-1487

| | | |
|---|---|---|
| FEDERATED INDUSTRIES, INC., JAMES | ) | Appeal from the |
| L. EDELSTEIN, Individually and as Trustee of | ) | Circuit Court of |
| the James L. Edelstein Revocable Trust U/A/D | ) | Cook County. |
| 817/80, the JLE Gift Trust, and the JLE | ) | |
| Discretionary Trust, JOEL LEE EDELSTEIN, | ) | |
| Individually and as Trustee of the Joel E. | ) | |
| Support Trust and the Joel E. Discretionary | ) | |
| Trust and MARCY EDELSTEIN, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD A. REISIN AND OSTROW REISIN | ) | |
| BERK AND ABRAMS, LTD., | ) | Honorable |
| | ) | Allen S. Goldberg, |
| Defendants-Appellees. | ) | Judge Presiding. |

<u>MODIFIED UPON REHEARING</u>

JUSTICE QUINN delivered the opinion of the court:

Plaintiffs filed an accountant malpractice action against defendants, Richard A. Reisin and Ostrow, Reisin, Berk & Abrams, Ltd. (ORBA), alleging that defendants negligently provided accounting services, resulting in additional taxes and penalties to plaintiffs. The circuit court granted defendants' motion under section 2-619(a)(5) of the Code of Civil Procedure to dismiss (735 ILCS 5/2-619(a)(5) (West 2008)), finding that plaintiffs' lawsuit had not been filed within the applicable statute of limitations period. Plaintiffs appeal from that dismissal order. For the following reasons, we affirm.

## I. BACKGROUND

Plaintiff, Federated Industries, Inc. (Federated), is a holding company which, since 1990, was classified as an "S-Corporation" for federal tax purposes. The remaining plaintiffs (the Edelsteins) are the direct and beneficial owners of Federated's stock. Since Federated is a subchapter S corporation, Federated's income is treated as income to the shareholders for federal tax purposes.

Defendants ORBA and its director, Richard A. Reisin, were hired by Federated to perform accounting and consulting services. Defendants prepared Federated's tax returns for calendar years 2002, 2003, and 2004. Defendants' responsibilities included aiding Federated in maintaining its tax status as a subchapter S corporation, including computation of Federated's "passive investment income," as defined by the Internal Revenue Code, for each year. If defendants determined that Federated's passive investment income was likely to exceed 25% of Federated's "gross receipts" for the taxable year and, therefore, subject Federated to taxation on its yearly income, defendants were responsible for advising Federated to shift its investments to investments yielding nonpassive investment income. Defendants were to advise Federated in this manner because Federated's status as a subchapter S corporation would be terminated if Federated's passive investment income exceeded 25% of its gross receipts for three consecutive taxable years.

Defendants undercalculated Federated's passive investment income for three consecutive years (the 2002, 2003, and 2004 tax years) and did not advise Federated to shift investments so as to avoid passive investment income in excess of 25% of its gross receipts for each of these years.

As a result, Federated's status as a subchapter S corporation was jeopardized where it had passive investment income in excess of 25% of its gross receipts for three consecutive taxable years.

On September 27, 2004, plaintiffs were notified by the Internal Revenue Service (IRS) that Federated's federal income tax return for the year 2002 had been selected for examination. On November 8, 2004, the IRS held its opening appointment with Federated and defendants at defendants' offices, relative to the examination of the year ending December 31, 2002. The purpose of the opening appointment was to discuss procedures concerning the IRS examination.

On February 28, 2005, the IRS issued a "Form 4764- Large Case Audit Plan," which expanded the scope of its audit to cover the 2003 tax year. On March 9, 2005, the IRS issued a document request upon Federated for general information with respect to the 2003 tax year. On the same date, the IRS also issued a document request upon Federated, seeking information for the 2002 and 2003 tax years on the calculation of Federated's net passive income tax. On March 21, 2005, the IRS issued another document request upon Federated, requesting calculations for Federated's net passive income tax for the years 2000 and 2001.

On or about April 19, 2005, the IRS provided its initial conclusions about the 2002 and 2003 calendar-year audits of Federated. One of the issues raised by the IRS at that time was that Federated's passive income test failed for calendar years 2002 and 2003 and also for a third consecutive tax year, which could result in Federated's subchapter S corporation election being involuntarily terminated. On May 26, 2005, the IRS issued a "Form 4764-Large Case Audit Plan," which confirmed several examination issues for the years 2002 and 2003, including

passive income in excess of 25% of gross receipts and tax on that net passive income.

On July 15, 2005, Thomas Kosinski, a director at ORBA, authored a memorandum concerning the examination issues identified by the IRS in preparation for a meeting with plaintiffs' attorneys. Kosinski's memorandum included the IRS' conclusion that Federated's passive income was in excess of 25% of gross receipts for the tax years 2000, 2001, and 2002; and since the passive income test failed for three consecutive tax years, Federated's subchapter S corporation election should be terminated. The purpose of the meeting between defendants and plaintiffs' attorneys was to review the IRS examination issues and create a plan for future discussions with the IRS. The meeting took place on August 30, 3005, and the parties discussed the net passive income test and involuntary termination of Federated's subchapter S corporation election.

On September 15, 2005, the IRS issued "Form 5701- Notice of Proposed Adjustment" with respect to its examination issues. In this document, the IRS concluded that Federated had passive investment income in excess of 25% of gross receipts for the taxable years 2000, 2001, and 2002. The IRS advised that Federated's subchapter S corporation status would be terminated, effective January 1, 2003, based upon the IRS' finding that Federated had passive investment income in excess of 25% of gross receipts for three consecutive taxable years.

On October 18, 2005, Federated's attorneys met with the IRS and Thomas Kosinski from ORBA. During the meeting, the IRS presented a settlement proposal for the purpose of closing the Federated audit and to avoid the termination of Federate's subchapter S corporation status. The settlement proposal and issues discussed during the meeting were communicated to plaintiffs

on October 19, 2005. In an affidavit, Kosinski stated that, based on meetings with the IRS, he prepared "a summary of proposed audit adjustments to provide to the [IRS] consistent with Federated Industries, Inc.'s agreement to these adjustments." Kosinski attested, "As part of this process, the [IRS] requested the full agreement of all shareholders of Federated Industries, Inc. to consent to the proposed adjustments for calendar years 2002 and 2003." Kosinski further attested that he "he prepared a letter to the [IRS] dated December 27, 2005, which set forth the summary of these audit adjustments."

Pursuant to this letter, dated December 27, 2005, "Federated and its shareholders *** unanimously consented" to the IRS' proposed audit adjustments, including accepting a passive income tax for calendar year 2002 in exchange for the subchapter S corporation election not to be terminated for that year. Federated also elected to distribute its remaining earnings and profits with respect to calendar year 2003 ($60,887,937) in exchange for Federated's subchapter S corporation election not being terminated after the 2003 tax year. Federated also acknowledged that the IRS could perform a "limited scope" examination of Federated's 2004 tax return, limited to the issues raised in the 2002 and 2003 examinations.

On April 25, 2006, the IRS issued a letter to Federated enclosing its examination report and the proposed adjustments to Federated's federal income tax for calendar years 2002 and 2003. The IRS indicated that it would send separate examination reports to each partner, shareholder, beneficiary, or grantor of Federated. In this letter, the IRS requested that, "If our findings are acceptable, please sign and return the enclosed acceptance form."

On May 17, 2006, Federated's representatives returned to the IRS the acceptance of the

adjustments proposed in the IRS' examination report.  Federated also issued a check, dated May 12, 2006, to the United States Treasury in the amount of $140,816 in payment of the excess net passive income tax for the 2002 taxable year in the amount of $119,349, and interest in the amount of $21,467.

On May 15, 2008, plaintiffs filed a two-count complaint, which was subsequently amended.  Count I alleged accountant malpractice and count II alleged breach of an unwritten contract.  Both counts were premised on defendants' alleged miscalculation of Federated's passive investment income for the years 2002, 2003, and 2004.  Plaintiffs alleged that as a result of defendants' miscalculation, plaintiffs were required to pay a total in excess of $14 million in additional taxes, interest and penalties.

Defendants filed a motion to dismiss plaintiffs' complaint pursuant to section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2008)), asserting that plaintiffs' complaint was filed beyond the applicable statute of limitations for accounting malpractice actions (735 ILCS 5/13-214.2(a) (West 2008)).  On December 16, 2008, the circuit court entered an order denying defendants' motion to dismiss and defendants filed a motion to reconsider.  On May 11, 2009, the circuit court entered an order granting defendants' motion to reconsider and dismissing plaintiffs' complaint based on the court's finding that plaintiffs' lawsuit had not been filed within the two-year accounting malpractice statute of limitations period.  Plaintiffs now appeal.

## II.  ANALYSIS

On appeal, plaintiffs contend that the circuit court erred when it held that the statute of limitations relating to accounting malpractice had run on plaintiffs' claim against defendants.

No. 1-09-1487

Plaintiffs contend that the two-year statute of limitations did not begin to run until plaintiffs sustained damages which, according to plaintiffs, occurred on May 17, 2006, when Federated executed a formal written acceptance of the IRS' proposed adjustments.

A. Standard of Review

A section 2-619 motion to dismiss "admits the legal sufficiency of the complaint and raises defects, defenses or other affirmative matters, such as the untimeliness of the complaint, which appear on the face of the complaint or are established by external submissions which act to defeat the plaintiff's claim, thus enabling the court to dismiss the complaint after considering issues of law or easily proved issues of fact." Lipinski v. Martin J. Kelly Oldsmobile, Inc., 325 Ill. App. 3d 1139, 1144 (2001). Defendants have the burden of proving the affirmative defense relied upon in a section 2-619 motion, and such a motion should only be granted if the record establishes that no genuine issue of material fact exists. MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC, 364 Ill. App. 3d 6, 22 (2006). The fact that a complaint is filed after the running of the applicable statute of limitations is a valid reason for dismissal pursuant to section 2-619(a)(5). MC Baldwin, 364 Ill. App. 3d at 22. Our review of a section 2-619 dismissal is *de novo*. MC Baldwin, 364 Ill. App. 3d at 22.

B. Section 13-214.2(a) of the Code and Applicable Illinois Law

The statute of limitations applicable to this case is codified in section 13-214.2 of the Code of Civil Procedure (Code):

"(a) Actions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act, as amended, or

-7-

any of its employees, partners, members, officers or shareholders, for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission.

(b) In no event shall such action be brought more than 5 years after the date on which occurred the act or omission alleged in such action to have been the cause of the injury to the person bringing such action against a public accountant. Provided, however, that in the event that an income tax assessment is made or criminal prosecution is brought against a person, that person may bring an action against the public accountant who prepared the tax return within two years from the date of the assessment or conclusion of the prosecution." 735 ILCS 5/13-214.2(a) (West 2008).

Under Illinois law, the "discovery rule" governs statutes of limitations, such as section 13-214.2(a). Dancor International, Ltd. v. Friedman, Goldberg & Mintz, 288 Ill. App. 3d 666, 673 (1997). The effect of the discovery rule is to "dela[y] commencement of the statute of limitations until the plaintiff knows or reasonably should have known of the injury and that it may have been wrongfully caused." Dancor, 288 Ill. App. 3d at 672.

In this case, this court must determine the question, novel to this jurisdiction, of when taxpayers, whose tax returns have been challenged by the IRS, know or have reason to know that they have a cause of action against their accountants.

Plaintiffs argue that the circuit court erred in finding that the statute of limitations began to run prior to May 17, 2006, when plaintiffs returned their acceptance of the proposed tax

adjustments to the IRS.  Plaintiffs note that the trial court held that "Plaintiffs knew or reasonably should have known *** that both an injury has occurred and that the injury was caused by defendants prior to May 2006."  Plaintiffs assert that this language mimics section 13-214.2(a)'s discovery rule, by which the limitations period begins to run at "the time the person bringing an action knew or should reasonably have known of such act or omission" in the performance of professional services that are the basis for the action against an accountant. 735 ILCS 5/13-214.2(a) (West 2008).  Plaintiffs argue that, pursuant to the holding in MC Baldwin, the discovery rule has no application because where a plaintiff has no damages, as plaintiffs allege here, "the discovery rule is irrelevant because there is nothing to discover." MC Baldwin, 364 Ill. App. 3d at 22.

Defendants respond that plaintiffs' claims were time-barred where the statute of limitations began to run in December 2005, when plaintiffs unanimously consented to the IRS' proposed tax adjustments and, therefore, were aware of their injury.  Defendants assert that this court's determination in MC Baldwin, 364 Ill. App. 3d 6, supports their position rather than that of plaintiffs.

In MC Baldwin, plaintiff hired defendant DiMaggio in May of 2000 to perform certain accounting services in relation to plaintiff's agreements with its client, the CDC companies.  In October of 2000, DiMaggio withdrew from its accounting work and plaintiff hired Coglianese in November of 2000, to complete the same accounting services. MC Baldwin, 364 Ill. App. 3d at 8.  Coglianese resigned from its accounting work for plaintiff in January of 2001. MC Baldwin, 364 Ill. App. 3d at 8.  Plaintiff subsequently lost its client, the CDC companies, on April 20,

2001, when the CDC companies claimed that plaintiff had failed to provide certain accounting reports required by CDC. MC Baldwin, 364 Ill. App. 3d at 9.

On April 18, 2003, plaintiff filed a lawsuit against DiMaggio and Coglianese alleging that their breaches of contract and professional negligence caused $2,500,000 in damages when the CDC companies terminated their contracts with plaintiff. MC Baldwin, 364 Ill. App. 3d at 10. DiMaggio filed a motion for summary judgment and Coglianese filed a motion to dismiss pursuant to section 2-619(a)(5) of the Code, both arguing that plaintiff's claims were barred by the accounting malpractice statute of limitations because any breach of contract or professional negligence would have occurred when DiMaggio and Coglianese, respectively, withdrew from their agreement with plaintiff, which was more than two years before plaintiff filed its complaint. MC Baldwin, 364 Ill. App. 3d at 10-11. The trial court ultimately entered judgment in favor of defendants and plaintiff appealed.

On appeal, DiMaggio and Coglianese argued that the limitations period on any claim plaintiff had against them would have begun on the date of the defendants' respective withdrawals from their agreement with plaintiff, because as of those dates plaintiff had a right to recover the fees it paid for work that DiMaggio and Coglianese had not completed. MC Baldwin, 364 Ill. App. 3d at 13-14, 22-23. Plaintiff maintained that it sustained no damages until its loss of the CDC companies and that defendants' contentions to the contrary were laden with questions of fact. Plaintiff alternatively argued that even if a cause of action for the return of fees did accrue when defendants withdrew from their agreements and expired before plaintiff filed suit, the damages resulting from the loss of the CDC companies were part of a wholly separate

No. 1-09-1487

cause of action with a distinct limitations period running from April 2001 to April 2003. MC Baldwin, 364 Ill. App. 3d at 16.

In MC Baldwin, this court examined its previous determination in Dancor and that of our supreme court in Golla v. General Motors Corp., 167 Ill. 2d 353 (1995). In Dancor, the plaintiff brought a malpractice action against a certified public accounting firm alleging that the firm failed to detect warehouse fraud and embezzlement committed by Dancor's director and office manager. Dancor had also filed a 35-page RICO lawsuit in federal court against its director, which alleged 226 specific fraudulent acts by its director. Dancor, 288 Ill. App. 3d at 669. This court held that a professional opinion from Dancor's new accountants was not required to start the limitations period running, since the plaintiff had enough information without a professional opinion to file the 35-page federal RICO complaint alleging fraud and embezzlement by its director. Dancor, 288 Ill. App. 3d at 674. This court further noted, "The mere fact that the extent of injury is not immediately known or ascertainable does not postpone the triggering of the statute of limitations." Dancor, 288 Ill. App. 3d at 677, citing Golla, 167 Ill. 2d at 364.

In Golla, the plaintiff brought a products liability action against the manufacturer of her automobile almost four years after she had been injured in an automobile collision. The defendant moved to dismiss asserting that the plaintiff's action was barred under the applicable two-year statute of limitations period. The plaintiff, relying on the discovery rule, argued that, although she was aware of her initial injury at the time of the collision, she was unaware of the ultimate extent of her damages, *i.e.*, a latent injury that manifested itself thereafter. Our supreme court rejected plaintiff's argument and found that her action was time-barred. The court

-11-

explained:

"This court has never suggested that plaintiffs must know the full extent of their injuries before the statute of limitations is triggered. Rather, our cases adhere to the general rule that the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or the full extent of her injuries." Golla, 167 Ill. 2d at 364.

In MC Baldwin, this court explained, "Golla and Dancor generally stand for the proposition that existence of some injury starts the running of the limitations period on any claim arising out of the same events even though the injury may further develop or additional injuries may result from the same breach of duty." MC Baldwin, 364 Ill. App. 3d at 17. In MC Baldwin, this court did not resolve the issue of whether a claim for restitution against DiMaggio and Coglianese would have triggered the limitations period for plaintiff's claim for damages relating to the loss of its client. Rather, this court determined that a question of fact existed as to whether plaintiff sustained an injury that would have entitled it to an action for restitution at the time when DiMaggio and Coglianese each withdrew from their agreement with plaintiff. MC Baldwin, 364 Ill. App. 3d at 19, 23. As a result, this court held that this issue of material fact precluded summary judgment and dismissal on statute of limitations grounds. MC Baldwin, 364 Ill. App. 3d at 19, 23.

Defendants argue that pursuant to MC Baldwin, Dancor, and Golla, the plaintiffs were aware of some injury when they consented to the IRS' proposed tax adjustments in December 2005 and, therefore, the running of the limitations period began at that time. Defendants also

assert that even if the amount of plaintiffs' injury, *i.e.*, tax liability, was not immediately known, this fact would not delay the running of the limitations period.

Defendants further note that the language of the accounting malpractice statute of limitations, unlike the legal malpractice statute of limitations (735 ILCS 5/13-214.3(b) (West 2008)), does not provide that a cause of action accrues at the time plaintiffs knew or should reasonably have known of an "injury" for which damages are sought. Accordingly, defendants maintain that the limitations period on any claim plaintiffs had against them would have begun when plaintiffs knew of their accountants' miscalculations.

Plaintiffs respond that this court should find that the statute of limitations begins to run at the time a taxpayer receives the statutory notice of tax deficiency or, in the alternative, as in this case, at the equivalent time a taxpayer registers agreement with the IRS. Plaintiffs maintain that defendants' argument incorrectly attempts to distinguish accounting malpractice from legal malpractice claims.

Some courts in other jurisdictions have held, as plaintiffs contend, that the statute of limitations does not begin to run until the issuance of the statutory notice of deficiency, a formal notice of deficiency issued by the IRS at a later point in the deficiency procedure. See International Engine Parts, Inc. v. Feddersen & Co., 9 Cal 4th 606, 888 P.2d 1279, 38 Cal. Rptr. 2d 150 (1995). Other courts have held that the statute of limitations starts to run upon indication from the IRS of a disagreement with the taxpayer's return. See Isaacson, Stolper & Co. v. Artisan's Savings Bank, 330 A.2d 130 (Del. 1974) (applying the discovery rule, the court held that the statute began to run upon receipt of the first notice of an alleged deficiency from the IRS,

not when the taxpayer received a final determination of tax liability); see also Brower v.

Davidson, Deckert, Schutter & Glassman, P.C., 686 S.W.2d 1 (Mo. App. 1984) (the court held

that the statute began to run upon issuance of the examining agent's notice of a proposed

deficiency even though specific amount of taxes owed had not been determined); Ackerman v.

Price Waterhouse, 84 N.Y.2d 535, 644 N.E. 2d 1009, 620 N.Y.S. 2d 318 (accountant malpractice

action accrues upon client's receipt of accountant's skill and advice).

### C. IRS Audit Procedure

In determining which of the two approaches indicated by the above cases is preferable, a

brief overview of IRS procedures for examination of tax returns and assessment of deficiencies is

helpful. In Feddersen, the Supreme Court of California provided such an overview of the

procedures employed by the IRS. We quote from that opinion here at length:

"Once a federal tax return is selected for audit, the examination is performed by

an IRS examiner. At the conclusion of the examination, the taxpayer is sent a report of

the examiner's findings, indicating any proposed deficiency assessments. If the taxpayer

agrees with the findings of the examiner, he or she will sign the appropriate forms (form

No. 4549 and/or form No. 870) acknowledging the tax liability. [Citation.] If the taxpayer

signs the agreement form, he or she immediately (1) waives the required statutory notice

of deficiency pursuant to Internal Revenue Code section 6212 (the 90-day letter), (2)

waives the corresponding prohibition on collection for 90 days under Internal Revenue

Code section 6213, and (3) is thereafter precluded from litigating the proposed deficiency

in tax court. [Citations.] If the taxpayer does not agree with the examiner's proposed

-14-

findings, the findings will be reviewed in the district office, and the taxpayer will be sent a '30-day letter' instructing that the taxpayer has 30 days to file a protest. [Citation.] 'If the taxpayer fails to respond within the thirty days, a notice of deficiency will be issued. [Citation.] If the taxpayer timely files a protest, he [or she] will be accorded an appeals office conference ***. If a settlement is reached, the taxpayer will again be requested to sign the agreement form ***. A determination by the appeals office, however, is final insofar as the taxpayer's appeal rights within the IRS [are concerned], and if the taxpayer continues to disagree, the statutory notice of deficiency will be sent giving the taxpayer ninety days to file a petition in the Tax Court before collection actions are begun.' [Citation.]

Thus, the preliminary findings of the tax examiner are *proposed* findings that are subject to negotiation prior to any determination of tax deficiency. [Citation.] Once a deficiency is assessed, however, either by the taxpayer's consent to deficiency assessment, or by receipt of a final deficiency notice pursuant to Internal Revenue Code section 6212 et seq., the matter is final as to the IRS and subject to legal appeal in federal tax court. [Citation.]" (Emphasis in original.) Feddersen, 9 Cal. 4th at 612-13, 888 P.2d at 1282-83, Cal. Rptr. 2d at 153-54.

In the present case, on December 27, 2005, plaintiffs unanimously consented to the IRS' proposed tax adjustments. On April 25, 2006, the IRS issued a letter to plaintiffs enclosing its examination report and the proposed adjustments to Federated's federal income tax for calendar years 2002 and 2003. In this letter, the IRS requested that plaintiffs sign the enclosed acceptance

form.  On May 17, 2006, Federated's representatives returned to the IRS the acceptance of the adjustments proposed in the IRS' examination report and issued a check in payment of Federated's excess net passive income tax and interest. Issuance of a statutory notice of deficiency was therefore not required.  Against this background, we consider the issue raised by the parties.

### D.  Feddersen Analysis

Many of the facts in Feddersen parallel those presented in the present case.  In Feddersen, the clients (parent and subsidiary corporations) sued their accountants for negligence in connection with the preparation of tax returns that were subsequently audited by the IRS.  The tax issue concerned whether the subsidiary was qualified for certain tax benefits associated with being a domestic international stock corporation (DISC).  Feddersen, 9 Cal. 4th at 609, 888 P.2d at1280, 38 Cal. Rptr. 2d at 151 .  The subsidiary's president was advised by an IRS agent in 1986, two years into the IRS audit of the company's tax returns, that the company would be disqualified as a DISC because the accountants had failed to provide essential documentation.  Feddersen, 9 Cal. 4th at 609, 888 P.2d at 1280, 38 Cal. Rptr. 2d at 151.  Faced with the prospect of additional tax liability in July 1986, the subsidiary withdrew a settlement offer it had made in unrelated litigation.  Feddersen, 9 Cal. 4th at 609-10, 888 P.2d at 1281, 38 Cal. Rptr. 2d at 152.  At the same time, the company's bank decreased its line of credit because of the potential additional tax liability.  Feddersen, 9 Cal. 4th at 610, 888 P.2d at 1281, 38 Cal. Rptr. 2d at 152.  The IRS issued a preliminary audit report in June 1987, stating that it planned to disqualify the subsidiary as a DISC and impose tax deficiencies, interest, and penalties.  Feddersen, 9 Cal. 4th

at 610, 888 P.2d at 1281, 38 Cal. Rptr. 2d at 152. The IRS assessed the tax deficiency on May 16, 1988, and the plaintiffs filed suit against their accountants on May 15, 1990.

The defendants in Feddersen moved for summary judgment, arguing that the two-year statute of limitations ran in 1988 because it commenced in July 1986, when the subsidiary sustained actual injury by being forced to withdraw its settlement offer in the unrelated litigation and by having its line of credit reduced. The defendants further argued that the plaintiffs' payment of attorney fees in connection with the audit constituted actual injury for statute of limitation purposes. Feddersen, 9 Cal. 4th at 610, 888 P.2d at 1281, 38 Cal. Rptr. 2d at 152. The plaintiffs argued that their suit was timely filed because it was within two years after the IRS assessed the deficiency. Feddersen, 9 Cal. 4th at 611, 888 P.2d at 1282, 38 Cal. Rptr. 2d at 152. The trial court granted the defendants' motion and the appellate court affirmed. Feddersen, 9 Cal. 4th at 611, 888 P.2d at 1281, 38 Cal. Rptr. 2d at 152.

The Supreme Court of California reversed. "It created a special bright-line rule for accounting malpractice for the negligent preparation of tax returns that are subsequently audited by taxing authorities. The court held that the date in which the IRS makes a final determination of a tax deficiency serves by operation of law as the date of accrual of the statute of limitations in such cases, noting: 'The deficiency assessment serves as a *finalization* of the audit process and the commencement of actual injury because it is the trigger that allows the IRS to collect amounts due and the point at which the accountant's alleged negligence has caused harm to the taxpayer.' " (Emphasis in original.) Sahadi v. Scheaffer, 155 Cal. App. 4th 704, 717, 66 Cal. Rptr. 3d 517, 528 (2007), quoting Feddersen, 9 Cal. 4th at 617, 888 P.2d at 1285, 38 Cal. Rptr.

2d at 156. Thus, the Feddersen court held that the plaintiffs' action was timely filed where the actual injury occurred when the IRS issued its penalty tax assessment on May 16, 1988. The court explained, "Although [the defendants'] alleged negligence may have been 'discovered' during the audit, such potential liability could not amount to actual harm until the date of the deficiency tax assessment or finality of the audit process." Feddersen, 9 Cal. 4th at 620, 888 P.2d at 1287, 38 Cal. Rptr. 2d at 158.

The Feddersen court reasoned that adopting this approach "both conserves judicial resources and avoids forcing the client to sue the allegedly negligent accountant for malpractice while the audit is pending." Feddersen, 9 Cal. 4th at 620, 888 P.2d at 1287, 38 Cal. Rptr. 2d at 158. The court further noted, "It also avoids requiring the client to allege facts in the negligence action that could be used against him or her in the audit, without first allowing the accountant to correct the error (or mitigate the consequences thereof) during the audit process." Feddersen, 9 Cal. 4th at 620, 888 P.2d at 1287, 38 Cal. Rptr. 2d at 158, citing Ackerman v. Price Waterhouse, 156 Misc. 2d 865, 872, 591 N.Y.S.2d 936, 941 (1992) (general rule that statute of limitations for accountant malpractice does not begin to run until a tax deficiency is assessed "protects federal tax preparers from the prejudice of needless litigation expense on suits which must later be abandoned because no damage ensued, after occasioning an entirely wasted investment of court resources"), aff'd, 198 A.D. 2d 1, 604 N.Y. S.2d 721 (1993).

Courts in other jurisdictions have agreed with the California Supreme Court's decision in Feddersen. See, e.g, CDT, Inc. v. Addison, Roberts & Ludwig, 198 Ariz. 173, 7 P.3d 979 (App. 2000) (adopting the Feddersen rule in context of a sales tax deficiency assessment); see also

Clark v. Deloitte & Touche LLP, 2001 UT 90, 34 P.3d 209 (holding that the statute of limitations did not commence until tax court's decision upholding IRS' deficiency assessment became final and that while Feddersen's holding was sound it did not involve the taxpayer continuing to pursue remedies in tax court). A majority of other jurisdictions, preceding Feddersen, have also held that the statute of limitations for accounting malpractice involving the negligent preparation of tax returns commences when there is a formal assessment of a deficiency by the taxing authority. See Thomas v. Cleary, 68 P.2d 1090 (Alaska 1989); Feldman v. Granger, 255 Md. 288, 257 A.2d 421 (1969), *aff'd*, Leonhart v. Atkinson, 265 Md. 219, 289 A.2d 1 (1972); Streib v. Veigel, 109 Idaho 174, 706 P.2d 63 (1985); Chisholm v. Scott, 86 N.M. 707, 526 P.2d 1300 (1974); Sladky v. Lomax, 43 Ohio App. 3d 4, 538 N.E. 2d 1089 (1988); Atkins v. Crosland, 417 S.W.2d 150 (Tex. 1967); Ackerman v. Price Waterhouse, 156 Misc. 2d 865, 591 N.Y.2d 936 (1992), *aff'd,* 198 A.D.2d 1, 604 N.Y.S. 2d 721 (1993); Snipes v. Jackson, 69 N.C. App. 64, 316 S.E.2d 657 (1984); Wynn v. Estate of Holmes, 815 P.2d 1231 (Okla. App. 1991).

In Mills v. Garlow, 768 P.2d 554, 557 (Wyo. 1989), the Supreme Court of Wyoming held that the statute of limitations in an action against an accountant for advice allegedly causing increased tax liability began to run when the taxpayer received statutory notice of the tax deficiency or, in the alternative, when the taxpayer registered agreement with the IRS. The court noted that policy considerations supported this approach, including "the advantage of providing some certainty." Mills, 768 P.2d at 557. The court also stated that commencing the statute at this point would not abrogate the policy underlying the statute of limitations of preventing stale claims "because, pursuant to 26 U.S.C. § 6501(a) (1982), the IRS must file any notice of

deficiency and assess the deficiency within three years from the date the tax return was filed, unless both the taxpayer and the IRS consent in writing to extend the assessment period. 26 U.S.C. § 6501(c)(4) (1982)." Mills, 768 P.2d at 557.

The Mills court further noted that it is better policy to discourage the filing of lawsuits until such time as the likelihood of accountant error is established by the IRS at some point beyond the initial examiner's preliminary conclusions. The court explained, "We anticipate that this approach would also comport with the response of the average taxpayer to an examiner's proposed adjustments. The first step by such a taxpayer, as in the instant case, is likely to be the contacting of the accountant for assistance in sorting out his tax difficulties with the IRS. This effort would be frustrated if the taxpayer was required to immediately file a lawsuit against the accountant." Mills, 768 P.2d at 558.

The courts in these jurisdictions concluded that the applicable statute of limitations for accounting malpractice is not triggered until a tax deficiency is assessed, or in the alternative, when the taxpayer registers his or her agreement with the IRS. We note that sound policy reasons support such an approach. These include creating a bright-line rule, judicial economy, and preservation of the accountant-client relationship. See Feddersen, 9 Cal. 4th at 620, 888 P.2d at 1287, 38 Cal. Rptr. 2d at 158; see also Mills, 768 P.2d at 557-58.

In a petition for rehearing, plaintiffs argue that the December 27, 2005 letter was never submitted to the IRS and that Kosinski's affidavit stated that he merely prepared a summary of the audit adjustments that "had been discussed with the IRS." However, the record shows that based on settlement meetings with the IRS, Kosinski prepared "a summary of proposed audit

adjustments to provide to the [IRS] consistent with Federated Industries, Inc.'s agreement to these adjustments."  In the December 27, 2005, letter, plaintiffs "unanimously consented" to the IRS' proposed tax adjustments.  Therefore, plaintiffs agreed to additional tax liability and knew of their injury at that time.  The fact that the amount of plaintiffs' tax liability was not immediately ascertainable does not postpone the triggering of the statute of limitations.  See Dancor, 288 Ill. App. 3d at 677, citing Golla, 167 Ill. 2d at 364.

### III.  CONCLUSION

For the above reasons, we adopt the approach outlined in Feddersen and the majority of other jurisdictions and hold that the statute of limitations in an accountant malpractice case involving increased tax liability begins to run when the taxpayer receives the statutory notice of deficiency pursuant to Internal Revenue Code section 6212, or at the time when the taxpayer agrees with the IRS' proposed deficiency assessments.  Accordingly, we find that the two-year statute of limitations provided in section 13-214.2(a) began to run on December 27, 2005, when plaintiffs registered their unanimous consent to the proposed tax adjustments with the IRS. Therefore, this suit, filed May 15, 2008, was time-barred by the statute and we affirm the circuit court's dismissal.

Affirmed.

STEELE and COLEMAN, JJ., concur.